**Bennie Lee MOORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–00414–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 28, 1990.

Discretionary Review Refused (Appellant)
March 6, 1991.

Discretionary Review Refused (State)
March 6, 1991.

Gary A. Udashen, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

## OPINION

THOMAS, Justice.

A jury found Bennie Lee Moore guilty of aggravated robbery and, after finding the enhancement allegations to be true, assessed punishment at fifty years. In seven points of error, Moore contends that: (a) the evidence was insufficient to support the verdict; (b) the trial court failed to properly instruct the jury on what constitutes serious bodily injury; (c) the trial court erred in overruling his motion to quash the indictment; (d) the trial court erred in overruling his motion to appoint an expert witness; (e) the trial court improperly admitted certain statements he made to the security guards; and (f) the evidence was insufficient to support the jury's finding of true to the enhancement allegations. We find no merit in the first six points of error; however, we agree that the evidence was insufficient to support the finding of true to the enhancement allegations. Thus, we sustain the seventh point of error. The conviction is affirmed, the judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Moore walked into J.C. Penney's, a department store in the Northpark Shopping Center in Dallas, Texas, took a handful of chains from a jewelry rack, placed them in his vest and walked out. By the time the security department was notified, Moore was in the mall area outside the store. Mary Barnett and Patty England, security guards for J.C. Penney's, observed Moore in the mall and then followed him outside into the parking lot. Barnett started walking toward Moore while England attempted to get help from the Northpark security officers. As Barnett approached Moore, she heard him exclaim, over and over, "Where's my ride, where's my ride?" As a car approached, Moore turned to Barnett and said, "There's my ride" as he struck Barnett in the face with his fist. Barnett was able to prevent Moore from getting into the car before it sped away. By this

time, additional security officers had arrived and they began to chase Moore on foot. The officers pursued Moore through the parking lot and across a Dallas freeway. Moore was finally apprehended and returned to J.C. Penney's where he was arrested by Dallas police officers.

## SUFFICIENCY OF THE EVIDENCE AND FAILURE TO SUBMIT REQUESTED INSTRUCTION ON SERIOUS BODILY INJURY

In the first point, Moore asserts that the evidence was insufficient to support a conviction for aggravated robbery because the evidence does not support the finding that Barnett suffered serious bodily injury. When the sufficiency of the evidence is challenged, this Court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be afforded the testimony. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App. 1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982).

In order to be convicted of aggravated robbery, the elements of robbery, as well as an aggravating element, must be present. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1990). A person commits the offense of robbery when: (1) in the course of committing theft; and (2) with intent to obtain or maintain control of the property; (3) the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX.PENAL CODE ANN. § 29.02(a)(1) (Vernon 1989). A person commits the offense of aggravated robbery if: (1) he commits robbery as defined in section 29.02 of the Texas Penal Code; and (2) he causes serious bodily injury to another. TEX.PENAL CODE ANN. § 29.03(a)(1) (Vernon Supp. 1990). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PENAL CODE ANN. § 1.07(a)(34) (Vernon 1974).

As a result of the blow to her face, Barnett's cheekbone was fractured in three places. Barnett's surgeon described the injury as a complex zygomatic fracture that resulted in her right cheek being pushed in about an inch. Surgery was recommended for two reasons: (1) the depressed zygomatic fracture caused a significant cosmetic deformity that would "not get better by itself," and (2) this type of fracture presented the possibility in the future that the eye muscles could become discoordinated causing potential complications. The surgeon testified that without the operation, Barnett would have had permanent asymmetry of the face with a sunken-in appearance of her eye and cheekbone. It was the doctor's opinion that this would be a significant disfigurement. The surgery required that the physicians insert a small metal plate across the fracture site, which was held in place by eight metal screws. According to the surgeon, the operation was a success, and the slight difference between the two sides of Barnett's face was not perceptible by the average person.

█ Moore contends that since Barnett's surgery alleviated any serious permanent disfigurement he did not cause "serious bodily injury to another." Thus, he claims that the evidence is insufficient to find him guilty of aggravated robbery. In support of this position, Moore relies upon *Moore v. State,* 739 S.W.2d 347 (Tex.Crim.App.1987). It is argued that *Moore* requires that the jury consider only the injury as it exists following medical treatment in determining whether a victim suffered serious bodily injury. We disagree with this interpretation of *Moore.* In *Moore,* the victim suffered a minor stab wound to the back that he did not even know he had received until he saw blood on the couch where he had been lying. He immediately went to the hospital and was successfully treated. The State tried to prove that this injury was a

serious bodily injury under the "substantial risk of death" definition. At trial, the attending physician testified that the wounds were not the type of injuries that would create a substantial risk of death. *Moore v. State*, 739 S.W.2d at 349–50. Only when asked hypothetically whether, if the wound had been left untreated, it could create a substantial risk of death, did the doctor respond that there was a possibility that the wound could have become infected and proceed to a septicemia, which could be fatal. *Moore v. State*, 739 S.W.2d at 353. Thus, the State was attempting to prove that a minor injury was a serious bodily injury because the injury could have developed into a life-threatening one if it had remained untreated.

Prior to *Moore*, the determination of whether an injury was a serious bodily injury was controlled by *Brown v. State*, 605 S.W.2d 572 (Tex.Crim.App. [Panel Op.] 1980). In *Brown*, it was alleged that a broken nose was a serious bodily injury. The evidence established that the victim's nose was disfigured when the injury was inflicted, and if the bone had not been set, then the disfigurement would have been permanent. The Court of Criminal Appeals stated, "The relevant issue was the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment." *Brown v. State*, 605 S.W.2d at 575. We disagree with the contention that *Moore* overruled *Brown*. We interpret *Moore* as prohibiting the prosecution's attempts to transform a minor injury into a serious bodily injury through the use of speculative testimony about what might have occurred had the minor injury not been medically treated. *See also Kenney v. State*, 750 S.W.2d 10 (Tex.App.—Texarkana 1988, pet. ref'd).

The overwhelming weight of the evidence was that Moore's blow to Barnett's face created a serious and permanent disfigurement at the time it was inflicted. The fact that Barnett had access to plastic surgery to cure the disfigurement has no bearing on whether the injury constituted "serious bodily injury." Thus, we hold that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Moore was guilty of aggravated robbery. The first point is overruled.

In his second point, Moore contends that the trial court erred in refusing to submit his requested instruction, which stated that if the jury found that the injury was treated, they could not consider what would have happened had the injury remained untreated in determining whether there was a serious bodily injury. Because we have held that the injury *as inflicted* is the determinant factor, there was no error in refusing to submit the proposed instruction. The second point is overruled.

## MOTION TO QUASH THE INDICTMENT

■ In the third point, Moore asserts that the trial court erred in overruling his motion to quash the indictment. He maintains that the indictment failed to give him adequate notice because it failed to specify which of the four definitions of serious bodily injury the State intended to prove. *See* TEX.PENAL CODE ANN. § 1.07(a)(34) (Vernon 1974). Moore concedes that case law has held that the State does not have to specify which part of the definition of serious bodily injury it intends to prove. *Brown v. State*, 605 S.W.2d at 577; *Montgomery v. State*, 704 S.W.2d 359, 363 (Tex. App.—Corpus Christi 1985, pet. ref'd). He argues, however, that the facts of this case justify a deviation from these cases because the prosecutor "affirmatively misled" his trial counsel concerning the State's theory of the case. This misleading by the prosecutor, Moore argues, deprived him of due process because his attorney was unprepared to represent him against the State's evidence. We disagree.

Testimony concerning this issue was presented at the hearing on the motion for new trial. Moore's trial counsel testified that her reliance on the prosecutor's misleading statements prevented her from researching whether there is a medical standard for disfigurement, and thus, she was not able to cross-examine effectively the

State's medical witness. The only evidence in the record of an affirmative misrepresentation was the testimony by defense counsel that: "Through a series of conversations, I was led to believe, that they were going to show an impairment of an organ. In other words, that if the injury had been left untreated, then there would have been damage to the eye." Defense counsel, however, admitted that she knew there were several definitions of serious bodily injury and that she "was never actually given any definite statement, or information that [prolonged impairment] was the only way [the prosecutor] would go." In fact, upon cross-examination, defense counsel admitted that the prosecutor had consistently refused to tell her which definition of serious bodily injury he intended to prove. Thus, the record fails to support Moore's contention that the prosecutor affirmatively misled his trial counsel. The third point is overruled.

## MOTION FOR APPOINTMENT OF EXPERT WITNESS

■ In the fourth point of error, Moore asserts that the trial court erred in overruling his motion for the appointment of an expert witness. He maintains that he needed an expert witness to assist in determining the nature and scope of Barnett's injuries and whether she in fact suffered serious bodily injury. To support his claim of a constitutional right to the appointment of an expert witness, Moore cites *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). We hold that *Ake* is inapplicable to this case. The issue in *Ake* was "whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question." *Ake v. Oklahoma*, 470 U.S. at 70, 105 S.Ct. at 1090. The Court's holding was "that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Ake v. Oklahoma*, 470 U.S. at 74, 105 S.Ct. at 1092. Thus, the holding in *Ake* is limited to the context of an insanity defense, which was never an issue in Moore's trial.

The payment of expenses for expert testimony is governed by article 26.05 of the Code of Criminal Procedure, which provides that "counsel ... shall be reimbursed for reasonable expenses incurred with prior court approval for purposes of investigation and expert testimony...." TEX.CODE CRIM.PROC.ANN. art. 26.05(a) (Vernon 1989). A trial court has discretion in determining whether to provide such funds. *Phillips v. State*, 701 S.W.2d 875, 894 (Tex.Crim.App. 1985), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986); *Wallace v. State*, 618 S.W.2d 67, 70 (Tex.Crim.App. 1981). Further, no abuse of discretion will be found absent a showing of harm. *Cadd v. State*, 587 S.W.2d 736, 739 (Tex.Crim. App.1979); *Cherry v. State*, 488 S.W.2d 744, 752–53 (Tex.Crim.App.1972), *cert. denied*, 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973).

Moore argues that he was harmed by the trial court's refusal to appoint an expert or to provide funds for one because the crux of the case was whether the injury constituted a serious bodily injury. Thus, he contends that he should have been able to hire his own expert on this issue. We disagree. The crux of the case was whether serious permanent disfigurement is determined at the time the injury is inflicted or after medical treatment. This issue is a legal one which could not have been resolved by a medical expert. The overwhelming evidence established that Barnett had a serious disfigurement prior to the surgery, given the fact that her right cheek had been pushed in about an inch. Further, we note that prior to the trial, defense counsel interviewed the attending physician and went over the nature of the injuries and the prognosis for Barnett's recovery. The statement of facts reflects that defense counsel conducted a thorough cross-examination of the attending physician as to whether Barnett's injuries fit within any of the legal definitions of seri-

ous bodily injury. It was clearly established through cross-examination that Barnett suffered no disfigurement following the medical treatment. We hold that the record fails to demonstrate any harm, and thus, the trial court did not abuse its discretion by refusing to provide a medical expert. The fourth point is overruled.

### FAILURE TO EXCLUDE EVIDENCE

■ In the fifth and sixth points of error, Moore maintains that the trial court erred in admitting certain statements he made to the security guards after he was apprehended. Moore argues that the statements were irrelevant and their prejudicial effects outweighed their probative value. *See* TEX.R.CRIM.EVID. 401–403. We disagree. The record reflects that after Moore was returned to the mall, he repeatedly told the security officers that he had started to bring his gun, wished he had brought his gun, and that he would kill them. According to the officers' testimony, Moore appeared to be serious.

■ Moore's statements were admissible because they were relevant as *res gestae* to establish the context of the offense and to establish his intent. Where one offense or transaction is one continuous episode or where another offense or transaction is so closely interwoven as to be part of the case on trial, proof of all facts is proper. In order to qualify as *res gestae*, evidence of the extraneous offense must be so closely interwoven with the offense on trial that it shows the context in which the primary offense occurred. *Maynard v. State*, 685 S.W.2d 60, 66–67 (Tex.Crim.App. 1985). Here, Moore's threats occurred immediately after he stole the jewelry, assaulted one of the security guards, and fled. He made the threats after he had been captured and while he was being held for the police. Thus, these statements were relevant to establish the context of this offense. The prejudicial nature of *res gestae* evidence will rarely render it inadmissible so long as it truly sets the stage for the jury's comprehension of the whole criminal transaction. *Maynard v. State*, 685 S.W.2d at 67.

The statements were also relevant to prove that Moore acted intentionally and knowingly in committing this offense. Moore's intent to injure Barnett was a material issue in the case, and the statements do tend to make it more probable that he intended to cause bodily injury to Barnett. Thus, they were relevant to a material issue in the case. *Plante v. State*, 692 S.W.2d 487, 493 (Tex.Crim.App.1985). Moore argues that the prejudicial impact outweighs the probative value of the statements because the alleged threats to kill someone with a gun are arguably more serious than the crime he was charged with. We disagree. Given the nature of the evidence, threats, compared to the serious nature of the aggravated robbery offense, the prejudicial potential of the statements was minimal. We hold that the statements were relevant and that their probative value outweighed their prejudicial effect.

In arguing that these statements were inadmissible, Moore relies heavily upon *Couret v. State*, 792 S.W.2d 106 (Tex.Crim. App.1990). In *Couret*, the defendant was arrested for burglarizing a warehouse and the police searched him. A hypodermic needle was found in his pocket and fresh needle tracks were observed on his arm. All of this was admitted into evidence during the burglary trial. This Court upheld the admission as showing the context of the criminal offense because the arrest was contemporaneous with the commission of the offense. The Court of Criminal Appeals reversed, holding that even evidence offered to show the context of the offense must meet the two-part test of relevancy and probative value outweighing prejudicial effect. We have already demonstrated that the statements were relevant and that their probative value outweighed their prejudicial effect; thus, we have followed the *Couret* test. The fifth and sixth points are overruled.

### ENHANCEMENT ALLEGATIONS

■ In the seventh and final point of error, Moore contends that there was insufficient evidence to support the jury's find-

ing of true to the enhancement allegations because there was no evidence as to the date on which the second offense was committed. We agree. Moore was indicted as a habitual offender pursuant to section 12.-42(d) of the Penal Code which provides:

If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life, or for any term of not more than 99 years or less than 25 years.

TEX.PENAL CODE ANN. § 12.42(d) (Vernon Supp.1990). The State, therefore, must prove beyond a reasonable doubt that the second prior felony was committed after the first conviction became final. *Porter v. State,* 566 S.W.2d 621, 622 (Tex.Crim.App. 1978); *Pitts v. State,* 742 S.W.2d 420, 423 (Tex.App.—Dallas 1987, no pet.).

The State alleged that Moore was convicted of the felony offense of aggravated burglary in New Mexico on May 9, 1980, and that prior to the commission of that offense, he was convicted of the felony offense of burglary in Texas on February 25, 1972. To prove the enhancement allegations, the State presented certified copies of judgments from the Texas and New Mexico courts. The Texas judgment shows that Moore was finally convicted on February 25, 1972, of burglary, and the New Mexico judgment shows that he committed aggravated burglary, aggravated battery, and conspiracy *"on or about* September 3, 1979." (emphasis added). Moore maintains that the "on or about" language renders the date insufficiently precise to prove that he committed the second offense after February 25, 1972. Neither Moore nor the State has cited us to any New Mexico cases interpreting the meaning of "on or about" in this context, and we have been unable to find any.

▆▆▆▆ In an indictment in Texas, "on or about" a certain date means any time preceding the indictment but within the stat-

ute of limitations. *Brown v. State,* 167 Tex.Crim. 87, 318 S.W.2d 655, 656 (1958). Since the judgment of the second conviction used the "on or about" language commonly found in indictments, we will apply the same analysis. When an indictment is used for enhancement purposes to prove that a second offense was committed after a previous conviction, the date alleged in the indictment for the second offense must be outside the statute of limitations period from the first conviction. *Ex Parte Klasing,* 738 S.W.2d 648, 649 (Tex.Crim.App. 1987) (overruled on other grounds by *Ex Parte Brown,* 757 S.W.2d 367, 369 (Tex. Crim.App.1988)); *Hamilton v. State,* 397 S.W.2d 225, 227 (Tex.Crim.App.1965). Where the court is the finder of fact at sentencing, we presume that the trial court is aware of the statute of limitations and will properly determine whether the date alleged in the indictment is outside the limitations period from the date of the first conviction. *Ex Parte Salas,* 724 S.W.2d 67, 68 (Tex.Crim.App.1987). Where the punishment hearing is before a jury and the jury is not instructed as to the applicable statute of limitations, we cannot presume that the jury found beyond a reasonable doubt that the second offense was committed after the first conviction. *Ex Parte Klasing,* 738 S.W.2d at 650. The State attempts to distinguish *Klasing* because the jury in that case had only the date the indictment was rendered and not the alleged date of the offense. The distinction is, however, inadequate given the broad interpretation of dates in indictments. Finally, the State asks that we interpret "on or about" as meaning "near" and in support of this position refers us to Webster's New Collegiate Dictionary. The State has failed to provide any convincing reasons why "on or about" should mean "within the limitations period" during the guilt-innocence phase of the trial and "near" during the punishment phase. We decline to adopt the State's interpretation. The State also cites *Cobb v. State* as being supportive of its position. *See Cobb v. State,* 655 S.W.2d 276, 278 (Tex.App.—Corpus Christi 1983, no pet.). The charging instrument in that case, however, contained both the gen-

eral "on or about" allegation and elsewhere alleged a specific date for the commission of the offense. The judgment in this case contains only the "on or about" language and nowhere specifies a specific date. *Cobb* is therefore inapplicable to the facts of this case.

In this case, the punishment hearing was before a jury and the jury was not given any evidence of the New Mexico statute of limitations. *Klasing* requires that in this situation, the jury be given the necessary information to permit it to determine whether the date alleged in the judgment is outside the statute of limitations from the first conviction. We therefore sustain the seventh point. The conviction is affirmed, and in accordance with article 44.29(b) of the Code of Criminal Procedure, the judgment is reversed and the cause is remanded to the trial court.