Affirmed and Opinion filed September 12, 2002









Affirmed and Opinion filed September 12, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00126-CR

____________

 

WILLIAM KEEN PERRY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the
184th District Court

Harris
County, Texas

Trial Court Cause
No. 796,970

 



 

O P I N I
O N

William
Keen Perry, appellant, brings this appeal from a conviction of the offense of
solicitation of capital murder.  A jury
found appellant guilty and assessed punishment at twenty-five years’
confinement in the Institutional Division of Texas Department of Criminal
Justice, and a $5,000 fine.  In three
points of error, appellant complains the trial court erred by (1) allowing the
State to amend its original indictment; (2) refusing to appoint a defense
expert to assist appellant during the punishment phase of trial; and (3)
admitting a prejudicial tape recording. 
We affirm.

 








F A C T U
A L   B A C K G R O U N D

The complainant, Joan Collin, and appellant married on
February 14, 1992.  After a year
or two, they began having marital problems. 
Appellant first moved out of the house and stayed with his parents in
1993.  Later, appellant moved back and
forth between his parent’s house and complainant’s house.  Divorce actions were filed by both the
complainant and appellant.  However,
these actions were ultimately dismissed. 
Complainant and appellant were permanently separated in 1998, and
appellant moved back into his parent’s house.

Complainant
testified that appellant threatened her many times after he moved out in
1998.  She stated that she received
several warnings concerning her safety from other people. Complainant
testified that, during Halloween week 1998 and the week following, appellant
threatened to kill her.  Shelly Smothermon, an employee of Accent Mobile Homes, testified
that appellant told her he was going to kill complainant and two of her close
friends.  Appellant told his friend of
many years, Michael Seibert, that he was going to have his wife “whacked” or
killed.

A couple of days after appellant spoke to Seibert, he came
back to Seibert’s office and again indicated he was going to have the
complainant “done away with” or “whacked.” 
Appellant told Seibert that he was going to end up with the house and
their son.  At that point, Seibert took
appellant seriously.  And, when appellant
asked Seibert if he knew anyone who could get the job done, Seibert told
appellant he would call a man in California named “Bo.”  Instead, Seibert called police officer, Jimmy
Hobson, and told him about appellant’s plan to have his wife killed.  Both Seibert and Hobson testified that
appellant commented about killing his wife by “either [giving her an] overdose
or blow[ing] her fucking head off.” Hobson
called homicide and spoke with Lieutenant Holt, who contacted Ken Vachris, an officer in the Homicide Division of the Houston
Police Department.  Vachris
asked Hobson to arrange a meeting with Seibert, which Hobson set up the next
day.








Sergeant Mayer, also an officer in the Homicide Division of
the Houston Police Department, testified that he worked on this case as an
undercover hit man.  Mayer posed as the
man named “Bo” from California.  On
October 30, 1998, Mayer met with appellant inside a Denny’s restaurant.  During the meeting, appellant gave Mayer a
note containing a description of his house, where he works, directions, a photo
of complainant, and a description of complainant and her vehicle.  

Appellant and Mayer=s October 31, 1998 meeting took place
at the same Denny=s restaurant where they originally met.  The police obtained an arrest warrant for
appellant.  Mayer wore a recording device
and other officers had a video camera, which operated without sound.  Appellant did not show up for the
meeting.  Mayer called him from a pay
phone in the Denny=s parking lot. 
Appellant said it was going to take him a little while to get
there.  The only recording device in use
at that time was the one taped to Mayer=s body.  Consequently, the recording of that phone
call only contained Mayer=s voice.  Appellant
finally showed up for the final meeting shortly before 5:00 p.m.  Mayer testified that appellant handed him a
knife.  Mayer placed it in his truck, and
then he raised his hands to signal to the other officers to arrest appellant. 

Appellant
testified on his own behalf.  He admitted
that he and his wife were having trouble during the summer of 1998.  Appellant testified that he’s known Seibert
since 1993, and that he has discussed his marital problems with Seibert.  However, appellant stated that the
complainant threatened to kill him.  He
contended that the complainant was abusive, dominating, and controlling.  In fact, appellant testified that it was
Seibert=s idea to kill appellant=s wife.  Appellant, nevertheless, acknowledged that he
did ask an undercover police officer to kill his wife, and admitted that during
the tape-recorded conversation he sounded as though he really intended to have
his wife killed.  In addition, appellant
conceded that if his wishes had been carried out, the complainant would be dead
per the conversation he had with “Bo.”  

 








Defective Indictment

In his
first point of error, appellant contends the trial court erred when it allowed
the State to amend its original indictment charging criminal
solicitation for capital murder by adding the language for remuneration and
the promise of remuneration, namely, money.  Appellant argues this addition effectively
charged him with a different offense in violation of Article 28.10(c) of the
Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art. 28.10(c)
(Vernon 1989).  We disagree.

The
original indictment stated the following:

The duly
organized Grand Jury of Harris County, Texas presents in the District Court of
Harris County, Texas, that in Harris County, Texas, WILLIAM KEEN PERRY,
hereafter styled the Defendant, heretofore on or about October 30, 1998, did
then and there unlawfully, with the intent that a capital felony be
committed, namely, capital murder, request, command, and attempt to
induce H. L. Mayer to engage in specific conduct, namely, to cause the death of
Joan Collin, that under the circumstances surrounding his conduct as the
defendant believes them to be, would constitute the capital felony.

 

The trial court allowed
the State to amend the indictment on May 5, 1999 to read as follows:

The duly
organized Grand Jury of Harris County, Texas presents in the District Court of
Harris County, Texas, that in Harris County, Texas, WILLIAM KEEN PERRY,
hereafter styled the Defendant, heretofore on or about October 30, 1998, did
then and there unlawfully with the intent that a capital felony be
committed, namely capital murder, request, command, and attempt to
induce H.L. Mayer to engage in specific conduct, namely to cause the death of
Joan Collin, for remuneration and the promise of remuneration, namely,
money, under the circumstances surrounding his conduct as the defendant
believes them to be, would constitute the capital felony.

 








Upon
appellant’s written motion, a pretrial hearing was held.  Appellant complained that although the formal
charges appeared as solicitation of capital murder, the original
indictment only charged solicitation of murder because the State omitted
the element of “remuneration or the promise of remuneration” in the original
indictment.  Therefore, appellant reasons
the State was limited to a solicitation of murder charge under the original
indictment.  Appellant argued that the
addition of the remuneration element escalated his original charge from murder
to capital murder in violation of his due process rights.  The trial court overruled appellant’s
objections.  Appellant now asserts the
same arguments on appeal.

Article
28.10(c) provides that an indictment may not be amended over a defendant’s
objection as to form or substance, (1) if  the amended indictment charges the
defendant with an additional or different offense; or (2) if the substantial
rights of the defendant are prejudiced.  Tex. Code Crim. Proc. Ann. Art. 28.10(c).  The Court
of Criminal Appeals has held that “an additional or different offense” under
Article 28.10(c) is defined as a different statutory offense.  Flowers v. State,
815 S.W.2d 724, 728 (Tex. Crim. App. 1991) (per curium).  In contrast, a “change in an element of an
offense changes the evidence required to prove that offense, but it is still
the same offense.”  Id.
at 728. 

Additional
or Different Offense








The original indictment tracks the elements of solicitation
of murder as set forth in Penal Code section 15.03(a), including appellant’s
alleged mens rea.[1]  It further identifies the ultimate offense
intended, capital murder.  The subsequent
amendment only added the provision of the Penal Code on which the State would
rely to establish that the murder solicited by appellant was capital murder.[2]  The amended indictment, therefore, did not
charge a different or additional statutory offense.  

Substantial
Rights

We
further conclude the amendment did not prejudice appellant’s substantial
rights.  Tex. Code Crim. Proc. Ann. Art. 28.10(c) (stating indictment
may not be amended over the defendant’s objection as to form or substance if
the substantial rights of the defendant are prejudiced).  The critical issue is whether appellant had
adequate notice to prepare a defense. Byrum
v. State, 762 S.W.2d 685, 691 (Tex. App.CHouston [14th Dist.] 1988, no pet.).
 First, the indictment was amended
six months before trial commenced. 
Second, the original indictment was clear and gave appellant notice he
was being charged with solicitation of capital murder.  The amendment did not charge a new or
different offense.  Finally, appellant
had the opportunity to object to the amended indictment and did so at the
pretrial hearing.  See Tex. Code Crim. Proc. Ann. Art.
28.10(c); Byrum, 762 S.W.2d at 691
(stating that whether a pretrial hearing was held is a factor in determining
whether a defendant’s substantial rights were prejudiced).  Therefore, appellant’s substantial rights were
not prejudiced and his complaint is without merit.  We overrule appellant=s first point of error. 

Funding
Expert Testimony








In his
second point, appellant contends the trial court erred in refusing to appoint
and fund a defense expert who would evaluate sentencing, a violation of his due
process rights.  Such payment is
authorized in Texas Code of Criminal Procedure Article 26.05.  Tex.
Code Crim. Proc. Ann. Art. 26.05(a) (Vernon Supp.
2002).  Article 26.05 provides
that counsel appointed to represent a defendant in a criminal proceeding shall
be reimbursed for reasonable expenses incurred with prior court approval for
purposes of investigation and expert testimony, and paid a reasonable attorney’s
fee for services provided.  Id.  The appointment of an expert witness lies
within the discretion of the trial court. 
Stoker v. State, 788 S.W.2d 1, 16 (Tex. Crim.
App. 1989).

In Duckett v. State, the court explained that “[e]xpert testimony, to be admissible, must pass the threshold
test that it concerns a subject upon which the aid of an expert will be of
assistance to the trier of fact.”  797 S.W.2d 906, 911 (Tex. Crim. App. 1990).  In regard to that threshold test, and in
support of his proposition, appellant contends because the State has unlimited
resources and the punishment portion of the trial is critical, it would be
important for the jury to hear the type of evidence his expert could provide
regarding appellant’s evaluation and assessment.  Appellant places considerable reliance upon
the decision in Ake v. Oklahoma, in
asserting his constitutional right to the appointment of such an expert.  470 U.S. 68 (1985).  However, in Moore v. State, a well‑reasoned
opinion, the Dallas Court of Appeals held the constitutional aspects of the Ake decision were limited to the context of an
insanity defense, and recognized that in a case such as this, a trial court has
discretion in determining whether to provide funds for expert testimony.  802 S.W.2d 367, 371 (Tex. App.CDallas 1990, pet. ref’d).








It is
established that an expert may testify at the punishment stage of the trial as
to a particular defendant=s propensity to commit violence in the future.  Moore v. State, 542 S.W.2d 664 (Tex.
Crim. App. 1976), overruled on other grounds, Butler v. State, 830
S.W.2d 125, 130 (Tex. Crim. App. 1992). 
However, appellant=s rationale that such testimony would “level the playing
field,” is of no moment.  Because the
case involved solicitation of capital murder, the expert stated that he would
have researched the offender pattern of people convicted of those types of
offenses.  However, at an ex parte
hearing, appellant=s expert admitted that he had never met or interviewed
appellant, and the results of his overall assessment could go either way.  Such unsupported and inconclusive defensive
theories and recommendations, concerning a particular punishment, have been consistently
rejected by the Court of Criminal Appeals. 
See Rey v. State, 897 S.W.2d
333, 341 (Tex. Crim. App. 1995); see also Stoker v. State, 788 S.W.2d 1,
16 (Tex. Crim. App. 1989) (holding it was not an abuse of discretion to refuse
to appoint expert to place issue of parole before jury); Sattiewhite
v. State, 786 S.W.2d 271, 290 (Tex. Crim. App. 1989) (stating that it was
not error to exclude expert opinion that a life sentence would be more
appropriate than the death penalty); Schulz v. State, 446 S.W.2d 872,
874 (Tex. Crim. App. 1969) (affirming trial court’s ruling that psychiatrist
was not permitted to testify regarding the effect of placing defendant on
probation rather than sentencing him to prison).  We cannot say the trial court abused its
discretion in refusing to appoint and fund a defense expert.  Appellant’s second point of error is
overruled.

Tape
Recordings

In his
third point of error, appellant complains of the admission of a tape recording
that contained only the voice of Sergeant Mayer.  At trial, appellant objected to the
admissibility of the recording because, although it was allegedly of a
conversation Mayer had with appellant, it was one-sided and did not have
appellant’s voice on it at all.  On
appeal, however, appellant argues that the admission of the recording was
unfair and prejudicial under Rule of Evidence 107.  Tex.
R. Evid. 107.[3]









It is
well established that a point of error on appeal must correspond to the precise
objection made in the trial court.  Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986);
Hodge v. State, 631 S.W.2d 754, 757 (Tex. Crim. App. 1982); Williams
v. State, 549 S.W.2d 183, 187 (Tex. Crim. App. 1977).  Here, appellant’s complaint on appeal that
the one-sided tape recording was unfair and prejudicial under Rule of Evidence
107 does not sufficiently correspond to his blanket admissibility objection at
trial.  Therefore, appellant has not
preserved this issue for appeal.

Furthermore,
as the State correctly notes, appellant failed to object to Mayer’s testimony
regarding the content of the statements made on the tape.  Mayer’s testimony at trial regarding the tape
recording included references to the same information that was contained on the
tape recording.  In Anderson v. State,
the rule regarding such cumulative evidence was stated as follows:  “Inadmissible evidence can be rendered
harmless if other evidence at trial is admitted without objection and it proves
the same fact that the inadmissible evidence sought to prove.”  717 S.W.2d 622, 628 (Tex.
Crim. App. 1986).  Therefore, any
conceivable error was cured by Mayer’s unchallenged  testimony regarding the contents of
the statements recorded on the tape. 
Appellant’s third point of error is overruled.

Accordingly, we affirm the judgment of the trial
court.

 

 

 

/s/        John
S. Anderson

Justice

 

 

Judgment rendered and Opinion filed
September 12, 2002.

Panel consists of Justices Anderson,
Hudson, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]  Section
15.03(a) Criminal Solicitation provides, in part:

(a) A
person commits an offense if, with intent that a capital felony or felony of
the first degree be committed, he requests, commands, or attempts to induce
another to engage in specific conduct that, under the circumstances surrounding
his conduct as the actor believes them to be, would constitute the felony or
make the other a party to its commission.





[2]  Section
19.03(a)(3), Capital Murder, provides, in part, a person commits an offense if
he commits murder and :

(3) the person commits the murder for remuneration or the
promise of remuneration or employs another to commit the murder for
remuneration or the promise of remuneration.





[3]  Texas Rule of
Evidence 107, the rule of optional completeness, states:

When part
of an act, declaration, conversation, writing or the recorded statement is
given in evidence by one party, the whole on the same subject may be inquired
into by the other, and any other act, declaration, writing or recorded
statement which is necessary to make it fully understood or to explain the same
may also be given in evidence, as when a letter is read, all letters on the
same subject between the same parties may be given.