Affirmed and Memorandum Opinion filed January 17, 2006









Affirmed
and Memorandum Opinion filed January 17, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00976-CR

____________

 

MICHAEL ATKINSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 968,787

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant Michael Atkinson
guilty of aggravated assault and assessed punishment at fifteen years= confinement in
the Texas Department of Criminal Justice, Institutional Division.[1]  In seven issues, appellant challenges
evidentiary rulings and the legal and factual sufficiency of the evidence.  We affirm.

Factual and
Procedural Background








Appellant was indicted for having Aintentionally and
knowingly cause[d] serious bodily injury to Bob Ballard . . . by striking
[Ballard] with his hand.@ 
Following appellant=s not guilty plea,
trial was to a jury.  Three witnesses
testified for the State: Ballard, Officer Tim Quimby, and Dr. Austin Orette.

Ballard testified he performed maintenance
work at the Pont Alba Apartments.  On the
night of the assault, he was working outside on plumbing at the apartment
complex when he observed appellant sitting in the passenger seat of a car,
driven by a woman.  As appellant and the
woman were getting out of the car, Ballard told them they needed to move the
car because it was blocking the entrance gate. 
Both appellant and the woman appeared to be intoxicated and were Alaughing and
carrying on.@

Ballard entered the business office and
retrieved his cellular telephone and additional tools.  When Ballard came back outside, he saw
appellant knocking on the door of an apartment and yelling for a person named
Pedro.  The woman was walking rapidly back
to her car and appeared frustrated. 
Ballard followed her to get her license plate number and called 911 from
his cellular telephone.  As Ballard was
walking toward the car, he was struck from behind and fell to the ground.  He rolled over and saw appellant.  As Ballard was trying to get to his feet,
appellant struck Ballard in the face and chest with his closed fists.  Ballard also testified appellant was kicking
at him, striking his chest and face.  At
one point, Ballard felt his jaw Afold and drop.@  According to Ballard, appellant bit Ballard
on the bridge of his nose, his arm, and thigh.  
Ballard struck appellant with his elbows.  At some point during the assault, appellant realized
the woman had left and asked Ballard for the keys to Ballard=s car.  Ballard threw them over the fence.

Ballard subsequently had surgery on his
jaw.  His jaw was wired shut for several
days after the surgery.   At the time of
trial, he still had pins in his jaw and was still continuing to have work done
on his jaw.








In response to questions on
cross-examination, Ballard testified he had never served in Vietnam or been in
the military service.  He also testified
he took methadone for chronic back pain. 
He denied telling anyone he had been kicked from behind.

Officer Quimby went to the apartment
complex in response to a dispatch informing him there was an intoxicated person
at the complex causing a disturbance. 
After he arrived, he heard a person yelling for help, ran toward the
noise, and observed appellant on his knees straddling Ballard and repeatedly
striking him with his closed fists. 
Quimby heard appellant say he was going to cut Ballard with his knife.  Quimby drew his weapon and ordered appellant
to get off Ballard.  Appellant seemed
extremely intoxicated and had a strong odor of alcohol.  Quimby observed the left side of Ballard=s face was
completely caved in, and Ballard had blood on his shirt and face, and bite
marks on his arm.  Appellant had minor
scratch marks and red marks on his face.

On cross-examination, Quimby testified
several officers searched the area.  They
did not find a cellular telephone, knife, or any tools.  They did find keys on the other side of the
fence.  In response to the question of
whether a bite mark on the side of the victim=s arm could mean
someone was trying to bite his way out of a chokehold, Quimby testified, AIt could be or it
could be that it just happens to be where the defendant bit him at.@

On the night of the assault, Dr. Orette,
an emergency room physician, observed Ballard had multiple fractures of the
jawbones, treated him for pain, and referred him to a specialist for surgery on
his jaws.  Without surgery, Ballard would
have suffered from a facial deformity, would have been unable to chew properly,
and might have experienced difficulty talking. 
Referring to Ballard=s medical records
related to the surgery, Orette testified the surgery involved cutting Ballard=s jaw, inserting a
metal plate on one side and a screw on the other.  According to Orette, Ballard could function
normally A[o]nce he=s healed and gets
over the soft diet and all that.@  Orette testified complete healing required
four to six weeks, but there could be residual pain and arthritis might develop
in the mandible joint.








Orette testified Ballard reported he had
been kicked before being thrown to the ground. 
On cross-examination, Orette testified the records from the hospital
where  Ballard had surgery indicated (1)
Ballard had reported having gunshot wounds from the Vietnam war, (2) was on
methadone and interferon therapy, and (3) had Hepatitis C.  Orette stated some people use methadone as an
analgesic and others use it  to wean
themselves from an addiction to opiates. 
Appellant also attempted to elicit Orette=s opinion
regarding the implications of the bite marks on Ballard=s arms, and the
following transpired:

Q       [By defense counsel] In your experience
in the emergency room, have you ever seen bites on the inside of somebody=s arm from a fight?

A       Oh, yeah. 
I=ve seen fights.  I=ve seen bites, I mean.

Q       Is that usually consistent with maybe
somebody having somebody in a chokehold?

[By the prosecutor]:
Objection.  Calls for speculation on his
part.

THE COURT: Sustained.

Q       [By defense counsel] In your opinion, if
that is indeed a bite mark on Mr. Ballard,=s arm, could that be consistent with his arm having someone
in a chokehold?

[By the Prosecutor]: Objection.  Calls for speculation.

THE COURT:          Sustained.

 

Appellant did not testify at the guilt
phase.  The jury found appellant guilty
of aggravated assault as charged in the indictment.

Discussion

I. 
Cross-Examination of Dr. Orette








In his first point of error, appellant
contends the trial court committed reversible error when it sustained the state=s objections to
appellant=s cross-examination of Dr. Orette, the
emergency room physician who first treated Ballard.  Appellant sought to elicit Orette=s opinion on
whether the bite marks on Ballard=s arms were
consistent with Ballard=s having appellant in a choke hold.  The state twice objected on the ground the
questions called for speculation, and the trial court sustained both
objections.

The state contends appellant did not
preserve error in exclusion of the testimony. 
We agree.

An appellant may not urge error in the
exclusion of evidence unless he perfected an offer of proof or a bill of
exceptions.  Guidry v. State, 9
S.W.3d 133, 153 (Tex. Crim. App. 1999); see Tex. R. App. P. 33.1(a)(1)(B); Tex. R. Evid. 103(a)(2), (b).  Appellant has done neither. Absent a showing
of what the excluded testimony would have been, or an offer of a statement
concerning what the excluded evidence would show, an appellant presents nothing
for review.  Guidry, 9 S.W.3d at
153. 

In the present case, however, appellant
contends no offer of proof is necessary because the substance of the excluded
evidence is apparent from the context.  See
Tex. R. Evid. 103(a)(2); Garza
v. State, 846 S.W.2d 936, 939 (Tex. App.CHouston [1st
Dist.] 1993, pet. ref=d). 
Specifically, appellant contends, A[I]t is apparent
that the doctor would have testified that the bite wounds found on the
complainant=s arm were consistent with the complainant
attempting to strangle the appellant.@  Although the substance of the question is apparent,
the substance of Orette=s answer is not.  See Johnson v. State, 925 S.W.2d 745,
749 (Tex. App.CFort Worth 1996, pet. ref=d) (citing Garza,
846 S.W.2d at 939, and holding that, although the substance of the question
asked was apparent, as a result of defendant=s failure to
provide appellate court with any offer indicating witness=s response,
substance of evidence was not before the court).  Appellant simply assumes Orette would have
answered in a manner favorable to the defense. 
Given Orette=s reluctance to agree with appellant=s proffered causes
of Ballard=s other injuries, we do not so assume.[2]








Because appellant made no offer of proof
and the substance of Orette=s answer is not
apparent, appellant has waived any error. 
See Garza, 846 S.W.2d at 939. 
Accordingly, we overrule this point. 
See id.

II. 
Legal and Factual Sufficiency of the Evidence

A. 
Standard of Review

In issues two through seven, appellant
contends the evidence is legally and factually insufficient to sustain his
conviction for aggravated assault.  In a
legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and determine whether a trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Young v. State, 14 S.W.3d 748, 753
(Tex. Crim. App. 2000).  In conducting
this analysis, we may not reweigh the evidence and substitute our judgment for
that of the jury.  King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

The standard for a factual sufficiency
review requires the reviewing court to provide a neutral review.  See Zuniga v. State, 144 S.W.3d 477,
482 (Tex. Crim. App. 2004).  Even if we
disagree with the verdict, our factual sufficiency review must be appropriately
deferential to avoid substituting our judgment for that of the fact
finder.  Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). 
We will not deem the evidence factually insufficient unless (1) it is
too weak, when considered by itself, to support the finding of guilt beyond a
reasonable doubt, or (2) contrary evidence, if present, is strong enough that
the beyond-a-reasonable-doubt standard could not have been met.  Zuniga, 144 S.W.3d at 484B85; see Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  In conducting a factual sufficiency review,
we must consider the evidence the appellant claims undermines the verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).








B. 
Analysis

1.  Self-Defense

In appellant=s sixth and
seventh points of error, he argues the evidence was legally and factually
insufficient because Athe state never rebutted [his] assertion of
self-defense beyond a reasonable doubt.@  A defendant bears the burden of producing
some evidence in support of a claim of self‑defense.  Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim.
App. 1991).[3]  Once the defendant produces such evidence,
the State bears the burden of persuasion to disprove the raised defense.  Zuliani, 97 S.W.3d at 594; Saxton,  804 S.W.2d at 913B14.  The burden of persuasion is not one that
requires the production of evidence; rather, it requires only that the State
prove its case beyond a reasonable doubt. 
Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 913.
There is an implicit finding against the defensive theory when a jury finds the
defendant guilty.  Zuliani, 97
S.W.3d at 594; Saxton, 804 S.W.2d at 914.








In reviewing a challenge to the legal
sufficiency of the evidence to support the rejection of a self‑defense
claim, we view the evidence in the light most favorable to the prosecution to
determine if any rational trier of fact would have found beyond a reasonable
doubt the essential elements of the offense and against the appellant=s self‑defense
claim. Saxton, 804 S.W.2d at 914. 
In reviewing a challenge to the factual sufficiency of the evidence to
support the rejection of self‑defense, we review all the evidence in a
neutral light and ask whether the State=s evidence taken
alone is too weak to support the finding of guilt beyond a reasonable doubt and
whether the evidence supporting the defense is strong enough that the rejection
of the self-defense claim does not meet the beyond‑the‑reasonable
doubt standard.  See Zuniga, 144
S.W.3d at 484B85; Zuliani, 97 S.W.3d at 595; see
also Roy v. State, 161 S.W.3d 30, 36B37 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (harmonizing articulation of standards in Zuniga
and Zuliani).

A person commits an aggravated assault if
he Aintentionally,
knowingly, or recklessly@ causes Aserious bodily
injury to another.@  Tex. Pen. Code Ann. '' 22.01(a)(1),
.02(a)(1) (Vernon Supp. 2005).  With
certain exceptions, Aa person is justified in using force
against another when and to the degree he reasonably believes the force is
immediately necessary to protect himself against the other=s use or attempted
use of unlawful force.@  Tex. Pen. Code Ann. '  9.31(a) (Vernon 2003).[4]








Ballard, the complainant in the present
case, testified he was calling 911 on his cellular telephone when he was struck
from behind on the right-hand side of his head. 
Ballard fell to the ground, landing on his arm and the side of his
face.  He turned around to see
appellant.  As Ballard was trying to get
to his feet, appellant struck Ballard in the face with his closed fist.  Appellant was punching  Ballard with both fists.  Ballard tried several times to get up, but
never got control of his balance.  When
Officer Quimby arrived, appellant was straddling Ballard and using both fists
to strike Ballard in the face with a repetitive motion.  It did not appear to Quimby to be a two-party
fight.  Quimby observed the left side of
Ballard=s face was
completely caved in.  Quimby also
observed marks on Ballard=s nose and two bite marks on his arm.  According to Quimby, appellant had minor
scratches and red marks in his facial area. 
Quimby testified without objection Ballard was able to clear up what had
happened and Quimby found Ballard to be truthful.  On cross-examination, Quimby opined a bite
mark on a person=s arm could mean a second person was
trying to bite his way out of choke hold or could just happen to be where the
second person bit the first person.








Having reviewed the evidence in the light
most favorable to the prosecution, we conclude a rational trier of fact would
have found beyond a reasonable doubt the essential elements of the offense and
against the appellant=s self‑defense claim. See Saxton,
804 S.W.2d at 914.  Having reviewed all
the evidence in a neutral light, we also conclude the State=s evidence taken alone is not too
weak to support the finding of guilt beyond a reasonable doubt, and the
evidence supporting the defense is not so strong that the rejection of the
self-defense claim does not meet the beyond‑the‑reasonable doubt
standard.  See Zuniga, 144 S.W.3d
at 484B85.

We overrule appellant=s sixth and seventh points of error.

2. 
Serious Bodily Injury

In appellant=s forth and fifth points of error, he claims the evidence is
legally and factually insufficient to support the aggravated assault conviction
because the complainant=s injuries did not constitute serious bodily injury.
Appellant concedes there is some evidence of bodily injury but argues the
evidence is insufficient to prove he caused Aserious bodily injury.@ 
We disagree.








To secure a conviction for aggravated assault according to
the jury charge in this case, the State was required to prove the defendant
committed an assault and caused serious bodily injury to another.  Tex.
Pen. Code Ann. ' 22.02(a)(1).  The
Texas Penal Code defines Aserious bodily injury@ as 
Abodily injury that creates a substantial
risk of death or that causes death, serious permanent disfigurement, or
protracted loss or impairment of the function of any bodily member or organ.@ 
Tex. Pen. Code Ann. ' 1.07(a)(46) (Vernon Supp.
2005).  This definition stands in
contrast to Abodily injury,@ which is required to maintain a
conviction for assault.  See Tex. Pen. Code Ann. '22.01(a)(1).  Bodily injury is defined as  Aphysical pain, illness, or any
impairment of physical condition.@ 
Tex. Pen. Code Ann. '1.07(a)(8).  Thus, Aserious bodily injury@ is bodily injury plus one or more of
the following effects: (1) a substantial risk of death; (2) death; (3) serious
permanent disfigurement; (4) protracted loss of the function of any bodily
member; (5) protracted impairment of the function of any bodily member; (6)
protracted loss of the function or any bodily organ; or (7) protracted
impairment of the function of any bodily organ. 
Moore v. State, 739 S.W.2d 347, 355 (Tex. Crim. App. 1987).

Because the penal code provides a different definition for Abodily injury@ than for Aserious bodily injury,@ the Texas Court of Criminal Appeals
has instructed us to presume the Texas legislature intended a meaningful
difference or distinction between the two. 
See id. at 349. 
Whether an injury constitutes Aserious bodily injury@ must be determined on a case-by-case
basis.  See id. at 352.

One measures the degree of disfigurement by the damage caused
by the wound when inflicted, not disfigurement as exacerbated or ameliorated by
medical treatment.  Brown v. State,
605 S.W.2d 572, 575 (Tex. Crim. App. [Panel Op.] 1980), overruled on other
grounds by Hedicke v. State 779 S.W.2d 837, 840 (Tex. Crim. App. 1989).  There must be evidence of some significant
cosmetic deformity caused by the injury. 
See Brown, 605 S.W.2d at 575 (testimony that broken nose would
cause disfigurement and dysfunction if untreated sufficient to establish
serious bodily injury); Moore v. State, 802 S.W.2d 367, 369 (Tex. App.CDallas 1990, pet. ref=d) (sufficient evidence of serious
bodily injury when victim=s cheek bone was fractured in three places; surgery necessary
to prevent significant cosmetic deformity).

In the present case, the evidence was legally and factually
sufficient to establish serious permanent disfigurement.  The evidence indicates Ballard=s (the complainant=s) right jaw sustained fractures in
different places, and the left jaw suffered one straight fracture.  The doctor testified Ballard=s jaw would not have healed property
without surgery.  Further, he testified
without surgery, Ballard would have subsequently developed an overbite creating
facial deformity and making chewing difficult. 
Thus, Ballard=s fractured jaw is sufficient to constitute serious permanent
disfigurement.








Having viewed all of the evidence in the light most favorable
to the prosecution, we hold the evidence is legally sufficient for any rational
trier of fact to have found Ballard=s injuries constituted serious bodily
injury.  Having reviewed all the evidence in
a neutral light, we also conclude the State=s evidence taken alone is not too weak to support a finding
beyond a reasonable doubt of serious bodily injury nor is the contrary evidence
so strong the beyond‑the‑reasonable doubt standard could not have
been met.  See Zuniga, 144 S.W.3d
at 484B85.

We overrule appellant=s fourth and fifth
points of error.  

3.  Complainant=s Credibility

In appellant=s second and third
points of error he claims the evidence is legally and factually insufficient to
support his conviction of aggravated assault because Ballard=s testimony is not
credible.  In conducting a legal
sufficiency review, we do not engage in a second evaluation of the weight and
credibility of the evidence, but ensure only that the jury reached a rational
decision.  Muniz v. State, 851
S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775,
784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

In a factual sufficiency analysis, we can consider only those
few matters bearing on credibility that we can fully determine from a cold
appellate record.  Johnson, 23
S.W.3d at 8. This approach occasionally permits some credibility
assessment but usually requires deference to the jury=s conclusion based
on matters beyond the scope of the appellate court=s legitimate
concern.  Id.  Unless the available record clearly reveals a
different result is appropriate, we must defer to the jury=s determination
about what weight to give contradictory testimonial evidence.  Id. 
This deference is required because resolution of the credibility issues
often turns on an evaluation of credibility and demeanor, and those jurors were
in attendance when the testimony was delivered. 
Id.  The evidence is then
accorded the appropriate consideration by the reviewing court in the context of
its overall analysis of the relevant evidence. 
Id. at 8B9.








Appellant argues Ballard=s testimony is not
credible because the evidence shows the following inconsistencies: (1) Ballard
denied being in the military or ever serving in Vietnam but reported to the doctors
he had gunshot wounds from this time, (2) Ballard denied being kicked from
behind, but reported to a treating doctor he had been kicked from behind, and
(3) Ballard testified he had tools in his possession when the attack occurred,
but police found no tools at the scene. 
Appellant also argues Ballard=s testimony is not
credible because of his prescription drug use at the time of the incident.

It is within the sole province of the jury
to reconcile conflicts, contradictions, and inconsistencies in the evidence. Tran
v. State, Nos. 14‑03‑01372‑CR, 14‑03‑01373‑CR,
14‑03‑01374‑CR, 2005 WL 2334828, at *7 (Tex. App.CHouston [14th
Dist.] June 2, 2005, pet. ref=d) (citing Bowden
v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982)). The jury is also the
judge of the credibility of the witnesses, and is free to believe or disbelieve
any portion of a witness=s testimony.  Id. (citing Cain v. State, 958
S.W.2d 404, 408B09 (Tex. Crim. App. 1997); Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)).  Considering all the evidence in the case, and
deferring to the jury=s role as sole judge of the weight and
credibility given to the witnesses= testimony, we are
unable to conclude the aspects of Ballard=s testimony to
which appellant points render the evidence factually insufficient.  Cf. id. (concluding evidence was
factually sufficient even though defendant contended (1) neither the victim nor
the outcry witness described the alleged incidents of sexual assault in Agraphic detail,@ (2) testimony of
the victim and the outcry witness conflicted regarding the location of the
incidents of sexual assault, (3) victim=s father testified
victim was untruthful, needed great deal of attention, and had falsely accused
him of abuse, and (4) regarding allegations in one cause number, victim could
say only it was Aprobable@ incident occurred
in bedroom and she was Aprobably@ asleep when
defendant Aprobably@ entered her
bedroom).

We overrule appellant=s second and third
points of error.








Conclusion

Having overruled appellant=s seven points of
error, we affirm the judgment of conviction.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion filed January 17,
2006.

Panel consists of Chief Justice Hedges and Justices Yates
and Anderson.

Do Not Publish C Tex. R. App. P. 47.2(b).











[1]  See Tex. Pen. Code Ann. ' 22.02(a)(1) (Vernon Supp. 2005).





[2]  When asked
whether the injury to the jaw was consistent with Ballard=s having fallen to the ground and hit his chin on the
sidewalk, Orette answered, AYou could fracture your jaw by any mechanism.@  When asked
whether the scrapes on the left side of Ballard=s face
were road rash, Orette answered, AIf I
have to make a professional opinion on this, that would not be like road friction.  That would be like finger claw.@  When asked
whether the injuries to the top of Ballard=s
forehead could have been caused by the head=s being
pushed to the ground on the sidewalk, Orette answered, AAll I can see here is somebody with some trauma.  Any mechanism could have been involved with
this.@





[3]  Appellant
contends the burden was on the State to rebut his defense beyond a reasonable
doubt.  In support, he cites Stone v.
State, 751 S.W.2d 579 (Tex. App.CHouston
[1st Dist.] 1988, pet. ref=d).  In Stone,
which predates Saxton and Zuliani, the court addressed a
defendant=s objection that the jury charge did not place the
burden on the State to disprove the defense of self-defense.  The court of appeals explained:

 

 Luck v.
State, 588 S.W.2d 371, 375 (Tex. Crim. App. 1979), held that a trial court
does not err in overruling a defense objection to the charge:  (1) if the charge requires the jury to acquit
the defendant if they believe that he was acting in self‑defense or they
have a reasonable doubt that he might have been;  (2) if the court instructs the jury that the
burden of proofCAbeyond a reasonable doubt@Cis on the State; 
and, (3) if the court instructs the jury on the presumption of
innocence.  The charge in the instant
case satisfied these requirements.

 

Stone, 751 S.W.2d at 587. 
Appellant=s interpretation of Stone is too broad and
arguably conflicts with Saxton and Zuliani.

 





[4]  Texas Penal
Code section 9.31 provides:

 

(a) Except as provided in Subsection (b), a person is
justified in using force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself against the
other=s use or attempted use of unlawful force.

(b) The use of force against another is not justified:

(1) in response to verbal provocation alone;

(2) to resist an arrest or search that the actor knows
is being made by a peace officer, or by a person acting in a peace officer=s presence and at his direction, even though the
arrest or search is unlawful, unless the resistance is justified under
Subsection (c);

(3) if the actor consented to the exact force used or
attempted by the other;

(4) if the actor provoked the other=s use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly
communicates to the other his intent to do so reasonably believing he cannot
safely abandon the encounter;  and

(B) the other nevertheless continues or attempts to
use unlawful force against the actor;  or

(5) if the actor sought an explanation from or
discussion with the other person concerning the actor=s differences with the other person while the actor
was:

(A) carrying a weapon in violation of Section
46.02;  or

(B) possessing or transporting a weapon in violation
of Section 46.05.         

(c) The use of force to resist an arrest or search is
justified:

(1) if, before the actor offers any resistance, the
peace officer (or person acting at his direction) uses or attempts to use greater
force than necessary to make the arrest or search;  and

(2) when and to the degree the actor reasonably
believes the force is immediately necessary to protect himself against the
peace officer=s (or other person=s) use
or attempted use of greater force than necessary.

(d) The use of deadly force is not justified under
this subchapter except as provided in Sections 9.32, 9.33, and 9.34.

 

 

Tex. Pen. Code Ann. ' 9.31 (Vernon 2003).