Jimmy L. BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 58106.

Court of Criminal Appeals of Texas,
Panel No. 3.

Sept. 10, 1980.

Rehearing Denied Oct. 15, 1980.

Donald L. Curry, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and Hollis Browning, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

## OPINION

ROBERTS, Judge.

The appellant was found guilty of aggravated rape and was assessed a term of 30 years' confinement. We find a reversible error among 32 grounds set forth by the appellant.

### I.

This is another case which must be reversed because of *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973), an opinion which was "unsupported by precedent and by reason, and [which has been] overruled." *Ward v. State*, 591 S.W.2d 810, 818 (Tex.Cr. App.1979). Also see *Wrenn v. State*, 597 S.W.2d 369 (Tex.Cr.App.1980); *Jewell v. State*, 593 S.W.2d 314 (Tex.Cr.App.1980); *White v. State*, 590 S.W.2d 936 (Tex.Cr.App. 1979); *Washington v. State*, 590 S.W.2d 493 (Tex.Cr.App.1979).

The appellant's defense was alibi. In support of that defense the appellant offered evidence that at a certain time he was at his neighbor's house. The purpose of the appellant's visit was to have the neighbor fill out a form which recommended that the appellant be granted a student loan. The neighbor testified to these events and the recommendation form was received in evidence. Only the date of the form was in issue. On the form the neighbor had written, "Mr. Brown is a very intelligent young man who is trying to prepare himself for the future welfare for [sic] his fellow man." On cross–examination of the neighbor, the State asked if the quoted statement referred to the appellant's moral character. The neighbor agreed that it did. The State then asked if the neighbor knew the appellant's reputation for being a peaceful and law abiding citizen. The appellant's objection was overruled. The neighbor testified that the appellant's reputation was good. The State then asked,

> "I will ask you, have you heard that Jimmy L. Brown, the Defendant in this case, has been charged by Grand Jury indictment in Lubbock County, Texas that on or about the 9th day of December, 1974, he committed the offense of burglary with the intent to commit rape?"

The question referred to an extraneous offense; the rape in this case occurred on December 11, 1974. The appellant's objections were overruled. The neighbor answered, "No." The appellant moved for mistrial,

> "on the basis of this departure from the rules of evidence, particularly those governing the admissibility of reputation by impeachment testimony and contend in effect the prosecutor was enabled on cross examination to raise character and then turn right around and make impeachment type questions.
>
> "We further move for mistrial on the basis of the injection into the record of the extraneous offense alleged to have been committed on December 9, 1974, that Mr. Griffin propounded via indirectly what he could not do directly, the

alleged offense on that date, the magnitude and damage and harm of this question can not be adequately limited by any conceivable limiting instruction, particularly under the facts and circumstances as elicited in this case."

The motion for mistrial should have been granted. Even if we accept the State's argument that the recommendation form was evidence of the appellant's character it was not evidence of reputation, and the witness was not made subject thereby to impeachment with "have–you–heard" questions. *Ward v. State*, 591 S.W.2d 810, 818 (Tex.Cr.App.1979). The attempt by the State to turn the neighbor from a character witness (if she was one) into a reputation witness was obviously improper. "There is no better known rule than that the reputation of the defendant cannot be inquired into by the state unless the accused himself opens up the way . . . ." *Childress v. State*, 92 Tex.Cr.R. 215, 241 S.W. 1029, 1033 (1922). *Cf. Els v. State*, 525 S.W.2d 11 (Tex.Cr.App. 1975). There was no sound justification for impeachment of the witness with "have–you–heard" questions.

The question which was asked implied strongly that the appellant had been indicted for an extraneous offense that involved intent to commit rape. In a rape trial, such a question is obviously harmful. A mistrial should have been declared, and we must grant a new trial because of the error which is discussed in grounds 12 through 18.

## II.

Even though we have found reversible trial error, we must dispose of the appellant's contentions that the evidence was insufficient. *Swabado v. State*, 597 S.W.2d 361 (Tex.Cr.App.1980); *Rains v. State*, 604 S.W.2d 118 (Tex.Cr.App., No. 59,107, 1980).

The appellant claims that there was insufficient evidence that the victim suffered serious bodily injury, as alleged. "Serious bodily injury" means, *inter alia*, bodily injury "that causes . . . serious permanent disfigurement, or protracted . . . impairment of the function of any bodily member

or organ." V.T.C.A., Penal Code, Section 1.07(a)(34). The victim's nose was broken and deformed on the day of the offense. The evidence was that such an injury would cause disfigurement and dysfunction of the nose if the bone were not set. In this case the bone was set, which prevented disfigurement and impairment of function. The setting of the bone did not make the evidence insufficient. The relevant issue was the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment. See Boney v. State, 572 S.W.2d 529 (Tex.Cr.App.1978) (evidence showing that such a wound, if unattended, could cause substantial risk of death was sufficient even though wound was in fact repaired). The evidence was sufficient to prove that the bodily injury was serious before it was treated medically. Grounds 5 and 7 are overruled.

■ Grounds 8 and 9 also challenge the sufficiency of the evidence, but they do nothing more than to argue that the jury should have had a reasonable doubt of the appellant's guilt. The evidence was conflicting, and the State's case was sufficient if the appellant's evidence was disbelieved. The grounds have no merit.

### III.

Ground 19 complains that an exhibit (a pair of boots) was the fruit of an illegal search. Although the seizure of the boots involves several constitutional problems, we must sustain it ultimately.

Officer Rankin went to the appellant's apartment with a warrant for the arrest of the appellant; no question about the validity of that warrant is raised. Rankin knocked on the appellant's back door; the appellant opened the door; Rankin went into the kitchen with Detective Akers behind him and handcuffed the appellant. While Akers stood with the appellant, Rankin "checked the rest of the house to see if anyone else was in the house." (He also went to the front door and let in "the other officers.") During this search of the house,

Rankin walked into the "back bedroom" and looked into the closet, where he saw a pair of boots on the floor of the closet. He did not seize the boots at that time. Presumably the officers took the appellant to jail. Rankin went to a magistrate and made an affidavit, which was sworn to at 2:13 p. m. on December 13, 1974, and which read (emphasis supplied):

"I, Earl Rankin, a Detective with the City of Lubbock Police Department have reason to believe and do believe that implements used in the commission of the crime of aggravated rape which occurred at 3708–B 54th Street in Lubbock, Lubbock County, Texas on December 11, 1974, are located, kept and possessed at a duplex apartment located at 3706–54th Street, in Lubbock, Lubbock County, Texas, said residence being more particularly described above. Said implements used in the commission of the above described aggravated rape are items of clothing described as tan work gloves, a gold shirt and hiking boots with a waffle pattern sole worn by the assailant in the above described rape.

"My belief that the above described items are located at the above described location is based upon the following: On the morning of December 13, 1974, Jimmy L. Brown, who occupies the duplex residence located at 3706–54th Street, Lubbock, Lubbock County, Texas, was arrested by me at said address for the above described aggravated rape, pursuant to a warrant for his arrest issued by Judge Charles Smith, Justice of the Peace of Lubbock County, Texas. During the course of this arrest, I personally observed hiking boots at the above described residence that match the description and have soles like the above described boots worn during the commission of the crime. Said boots left a distinctive pattern of footprints on the front porch of the residence of 3708–B 54th Street, Lubbock, Lubbock County, Texas, where the aggravated rape occurred.

"My belief is further based upon the fact that Jimmy L. Brown was placed, in

a lineup on December 13, 1974, and the victum [sic] of the above described crime positively identified Jimmy L. Brown as the same person who committed the assault on her on December 11, 1974." A search warrant issued two minutes later. The boots were seized under authority of the search warrant, and they were admitted in evidence at the trial.

The appellant argues that the warrant was obtained by the use of the fruits of an illegal search of his bedroom—the "check" that Rankin made after the arrest. In *Chimel v. California*, 395 U.S. 752, 762–763 & 766, 89 S.Ct. 2034, 2039–2040, 2041, 23 L.Ed.2d 685 (1969) (footnotes omitted) (emphasis supplied), the constitutional limit on searches incident to arrests was explained:

"* * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"*There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs*—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made

only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less.

\*   \*   \*   \*   \*   \*

"* * * No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items." It appears that Rankin did exactly what the Fourth Amendment proscribes; he routinely searched the other rooms of the apartment after arresting the appellant in the kitchen.

■ *Chimel* speaks of "well–recognized exceptions" to the requirement of a warrant. As one of these exceptions, we have recognized that *Chimel* "does not prohibit a search beyond that area [within an arrestee's reach] if the circumstances of the arrest are such that an arresting officer would be justified in believing that an expanded search would be necessary for his protection." *Simpson v. State*, 486 S.W.2d 807, 810 (Tex.Cr.App.1972). The question is whether a reasonably prudent person in the circumstances would have been warranted in the belief that his safety or that of others was in danger. W. LaFave, 2 Search & Seizure, Section 6.4(c) (1978). For example, when officers had lawfully entered a room to arrest someone and they saw other people running to other parts of the house they were justified in following those people. *Simpson v. State*, 486 S.W.2d 807 (Tex. Cr.App.1972). When officers had learned that two burglaries involving rape and theft of a pistol had just been committed, and a man had been seen entering the window of a third house nearby, officers were justified in looking in other rooms for possible accomplices or victims. *Nichols v. State*, 501 S.W.2d 107 (Tex.Cr.App.1973).

■ The State argues that the search in this case fell within this exception. The burden is on the State to prove that a warrantless search was justified. *McDonald v. United States*, 335 U.S. 451, 69

S.Ct. 191, 93 L.Ed. 153 (1948). No evidence was introduced to justify the search of the bedroom as an incident of the arrest in the kitchen; the only evidence was that the officer routinely searched the other rooms. We are bound to hold that the search incident to the arrest was not proved to have been justified.

█ A search warrant may not be procured lawfully by the use of illegally obtained information. *Davidson v. State*, 240 So.2d 463 (Miss.1970) (officer trespassed to get information used in procuring warrant); *State v. Stone*, W.Va., 268 S.E.2d 50, 27 Crim.L. 2372 (1980) (officers searched with invalid warrant, then used their observations to get a second warrant). *See Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) (enforcement of subpoenas obtained after illegal search): "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." The use of Rankin's observation of the boots during an illegal search incident to arrest was improper.

█ But, as the *Silverthorne* court went on to say, *id.*: "Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others ...." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This principle means, in cases where search warrants have been issued on the basis of an affidavit that included tainted information, that the warrant is nonetheless valid if it clearly could have been issued on the basis of the untainted information in the affidavit. W. LaFave, 3 Search & Seizure, Section 11.4(f) at 651 (1978). In this case the tainted information is contained in the emphasized sentence of the affidavit. If that sentence is eliminated, the rest of the affidavit is clearly sufficient to justify the issue of the warrant to search for the boots. The warrant was valid, and it was not error to admit the boots in evidence.

Ground 20 involves a claim that the search warrant was not executed within three days, as required by V.A.C.C.P., Art. 18.07. The return states that the warrant was executed on the same day it was issued. No error appears.

## IV.

█ Grounds 1, 2, 3, and 6 argue that the indictment should have been quashed because it does not describe the "serious bodily injury" which was alleged. As we have noted above, "serious bodily injury" is defined by statute. Further allegations of the nature of the injury would have been merely evidentiary, and they were not required. *See American Plant Food Corp. v. State*, 508 S.W.2d 598, 604 n.3 (Tex.Cr.App. 1974). The grounds are overruled.

█ We perceive no reversible error in ground 4. The appellant was prevented from asking a physician if the victim suffered "serious bodily injury." He was permitted to ask if the victim suffered any of the statutory definitions of serious bodily injury (*e. g.*, "substantial risk of death," "serious permanent disfigurement"), which accomplished the same purpose.

█ Grounds of error 22, 23, 27, and 28 are in violation of V.A.C.C.P., Article 40.09(9) in that they do not refer to the record in such a way that the points of objection can be clearly identified and understood by the court; they will not be considered. Grounds 31 and 32 purport to challenge the constitutionality of Sections 1.07(a)(34) and 21.03 of the Penal Code. The only argument is that, "the terms of these statutes are so vague as to cause men of common intelligence to guess at its [sic] meaning or differ in its [sic] application." We cannot evaluate the merits of these grounds, for the appellant has not even specified which terms are under attack. His objections cannot be "clearly identified and understood by the court"; V.A.C.C.P., Article 40.09(9).

Grounds of error 10, 11, 21, 24, 25, 26, 29, and 30 are unlikely to recur (at least in the form presented) at a retrial; they need not be considered.

The judgment is reversed and the cause is remanded.

DALLY, J., concurs in the results.