STUHLER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-208-CR

MARTINA STUHLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Martina Stuhler appeals her conviction for injury to a child.  In a single point, appellant contends that the trial court erred 
in refusing to grant a directed verdict on the issue of serious bodily injury.  
We reverse and render in part and remand in part.

Three-year-old M.V. lived with his father and appellant, his step-mother, from December 2002 to April 2003.  In April 2003, M.V. left appellant’s care and went to live temporarily with Valerie Davis, a “safe house” parent who had cared for him previously
.  Davis took M.V. to the hospital because he was having difficulty urinating and defecating
, his stomach was distended
 and hard, he had a red mark on his hand and a rash on his buttocks, and he walked with a limp 
and vomited after eating.   At the hospital, X-rays revealed increased stool throughout M.V.’s 
colon.  M.V. was diagnosed with moderate to severe constipation
 and treated with an enema.
 

The State charged appellant with injury to a child.  The indictment alleged that appellant “intentionally or knowingly cause[d M.V.] serious bodily injury or serious mental deficiency, impairment or injury . . . by confining or restraining [M.V.] in a bathroom or bedroom[.]”
(footnote: 2)  At trial, the State presented evidence of appellant’s abusive acts that caused 
M.V.’s resulting injuries.

At the close of the State’s case-in-chief, appellant’s attorney moved for a directed verdict on the serious bodily injury offense
.  The trial court denied the motion and, after the defense rested, submitted the case to the jury.  Over appellant’s objection, the jury charge instructed the jury to find appellant guilty of injury to a child if the jury found that appellant intentionally or knowingly caused M.V. serious bodily injury 
or
 serious mental deficiency, impairment, or injury.
(footnote: 3)  The jury found appellant guilty 
and assessed punishment at sixty-five years’ confinement and a $10,000 fine.

In her point on appeal, appellant complains that the trial court erred by denying her motion for directed verdict because 
there is no evidence that M.V. suffered a serious bodily injury as a result of being confined or restrained in the bathroom.  Appellant further complains that the trial court’s submission of the offenses to the jury in the disjunctive was harmful error because “[t]here is no way to tell if the jury convicted on mental injury alone.”  We address these complaints in turn.

A challenge to the denial of a motion for instructed verdict is a challenge to the legal sufficiency of the evidence.
(footnote: 4)  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
(footnote: 5)
 A person commits the offense of injury to a child if she

intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . :

(1) serious bodily injury;

(2) serious mental deficiency, impairment, or injury;  or

(3) bodily injury.
(footnote: 6)
 The penal code defines “serious bodily injury” as “bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.”
(footnote: 7)  In determining whether a serious bodily injury has occurred, the relevant inquiry is the disfiguring or impairing quality of the bodily injury as it was inflicted, not after the effects have been ameliorated by medical treatment.
(footnote: 8)
 After carefully reviewing the record in this case, we hold that there is no evidence that appellant’s conduct of confining or restraining M.V. in the bathroom caused M.V. serious bodily injury.  The evidence is as follows.

 M.S.
, appellant’s ten-year-old son, testified that appellant would lock M.V. in the bathroom in the morning and leave him there until the afternoon so that she could sleep
.  M.S. also testified that appellant disliked M.V. and was upset that he had come to live with them.
 

Dr. Cindy Holt, the doctor who treated M.V. when he was admitted to the hospital, testified that M.V. had “moderate to severe” constipation and a rash.
 
 
Although she testified that she found bruising and trauma to the liver from some kind of blow, old fractures, and evidence of burns, she did not testify that she found any other injury that could be attributed to confining or restraining the child in a bathroom. 

Further, although Dr. Holt opined that M.V. had suffered serious bodily injury, she immediately backtracked, stating,

When I saw [M.V.] he was not at risk of death.  The injuries that he happened to sustain were not an immediate risk of death.  However, that probably was luck of the draw.  When you sustain a large trauma to the abdomen, you risk not only injuring the liver, you risk injuring a much more fragile organ called the spleen, and that’s located on the other side of the abdomen from the liver.  If you injure the cells of the spleen, you can bleed to death very quickly.  And he didn’t sustain an injury to his spleen that we could detect.  However, again, he was lucky.  That much abdominal trauma carries a substantial risk of serious injury to that organ and if that organ had have been injured, he could have died. 

Dr. Holt also testified that, if the constipation had been left untreated and had progressed, it could have become a serious bodily injury.
  But she
 acknowledged that there was no evidence of serious permanent disfigurement to M.V. as a result of his constipation and that there were “no serious long-term ramifications” to his stomach and intestines.  
She said that M.V. began to stool spontaneously after being given an enema.

Although this evidence shows that M.V.’s constipation could have become a serious bodily injury absent medical intervention, it does not show that the injury, “as it was inflicted,”
(footnote: 9) constituted a serious bodily injury as that term is statutorily defined.
(footnote: 10)
 The other evidence concerning M.V.’s injuries as a result of his confinement in the bathroom pertains to his mental injury.

Dr. Michelle Young, M.V.’s therapist, testified that she diagnosed M.V. with long-term post-traumatic stress disorder
. 
 
She said that M.V. told her that appellant would tape him to the toilet seat.  She explained how appellant’s taping M.V. to the toilet seat and locking him in the bathroom affected him.  For example, she stated that M.V. 
has demonstrated a fear of bathrooms and has had problems with potty training, nightmares, and stuttering. 
 Because of these symptoms, Dr. Young opined that 
M.V. has a serious mental injury, deficiency, or impairment. 

In addition to expert testimony about M.V.’s condition, the State also presented lay testimony about how M.V.’s stay with appellant affected him.  Charlyn Bartlett, a foster parent, and Davis, the “safe house” parent, both described M.V.’s condition before he went to live with appellant.  Davis testified that M.V. was a potty-trained, “happy, rambunctious three-year-old” with an outstanding vocabulary 
when he stayed with her in June 2002, 
and Bartlett testified that M.V. was “tons of fun” when he spent two weeks in her care in December 2003.  Bartlett also testified that M.V. had no visible injuries and, with respect to M.V.’s potty training, stated that he was a “typical three-and-a-half-year-old in the middle of potty training, so sometimes he would go on the potty and other times he went in his pull-ups.” 

Davis and Brenda West, M.V.’s foster parent at the time of trial, described M.V.’s condition after he lived with appellant.  Davis testified that M.V. wore diapers, hoarded food, and was afraid to take a bath
 when he returned to her care in April 2003.  
West testified that M.V. initially feared the bathroom and continues to have difficulty controlling his bowels during times of stress.

While this evidence is, as appellant readily admits, evidence that M.V. was “greatly mentally afflicted” by appellant’s conduct
, it is not evidence of a serious bodily injury.
(footnote: 11)  Accordingly, because there is no evidence that M.V. suffered a serious bodily injury as a result of appellant’s conduct in confining or restraining M.V. in the bathroom, we hold that the trial court erred by denying appellant’s motion for a directed verdict on the serious bodily injury offense.

We now turn to appellant’s complaint regarding the jury charge.

Appellate review of jury charge error involves a two-step process.
(footnote: 12) 
 Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.
(footnote: 13)  Error in the charge, if timely objected to in the trial court, requires reversal if the error was “calculated to injure [the] rights of the defendant,” which means no more than that there must be 
some
 harm to the accused from the error.
(footnote: 14)
 Appellant complains that the trial court’s submission of both offenses to the jury in the disjunctive was harmful error because there is no way to tell whether the jury convicted her based solely on M.V.’s mental injury.  
Relying on 
Kitchens v. State,
 the State contends that, even if there is no evidence of serious bodily injury, trial court’s charge is proper because “serious bodily injury” and “serious mental deficiency, impairment, or injury” are simply two methods of committing a single offense and the evidence is sufficient to sustain a conviction under at least one of these theories.
(footnote: 15)  
We disagree.

The plain meaning of the statutory structure and language indicates that these are separate offenses.
(footnote: 16)  
For example, the offense of injury to a child by intentionally or knowingly causing serious bodily injury is a section 22.04(a)(1) offense.
(footnote: 17)  The offense of injury to a child by intentionally or knowingly causing serious mental deficiency, impairment, or injury is a section 22.04(a)(2) offense.
(footnote: 18)  Further, subsections (e) and (f) of the statute contemplate that the results described in subsections (a)(1), (2), and (3) are separate offenses.
(footnote: 19)  Subsection (e) provides that “
an
 offense under subsection (a)(1) 
or
 (2) is a felony of the first degree” if intentional or knowing, and subsection (f) provides that “
[a]n 
offense under subsection (a)(3) is a felony of the third degree when . . . committed intentionally or knowingly.”
(footnote: 20)
 A criminal defendant is entitled to a unanimous jury verdict.
(footnote: 21)  When a jury is charged on multiple offenses, the trial court must instruct the jury that it must be unanimous in deciding which offense it found that the defendant committed, and the record must show that the verdict was unanimous.
(footnote: 22)  
 The court’s charge in this case harmed appellant by permitting a nonunanimous verdict in which some jurors could have voted to convict her of causing serious bodily injury to a child and some could have convicted her of causing serious mental injury to a child.  This harm is exacerbated by the fact that there is no evidence to support one of these offenses.  Accordingly, we hold that the trial court’s charge constitutes reversible error.
(footnote: 23)
 Because the trial court erred by not granting appellant’s motion for directed verdict on the serious bodily injury offense and because the trial court  committed reversible error in its charge to the jury, we sustain appellant’s point on appeal.  We reverse the trial court’s judgment, render a judgment of acquittal on the serious bodily injury offense,
(footnote: 24) and remand the cause to the trial court for a new trial on the serious mental injury offense.
(footnote: 25)

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 September 29, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. Penal Code Ann.
 § 22.04(a)(1)-(2) (Vernon 2003).  M.V.’s other injuries alleged in the indictment, including bruises and two bone fractures, are not pertinent to this appeal because the State elected to seek conviction for the injuries caused by appellant’s locking M.V. in the bathroom.

3:
Specifically, the application paragraph of the charge instructed the jury:

Now if you find from the evidence beyond a reasonable doubt that on or about the 31st day of March, 2003, in Denton County, Texas the defendant, MARTINA STUHLER, did then and there intentionally or knowingly cause 
serious bodily injury or
 
serious mental deficiency, impairment, or injury
 to [M.V.], a child 14 years of age or younger, by act, to-wit: by confining or restraining [M.V.] in a bathroom you will find the defendant guilty of Injury to a Child, as charged in the indictment.  [Emphasis supplied.]  

4:
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997)
; 
Franks v. State
, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.).

5:
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

6:
Tex. Penal Code Ann.
 § 22.04(a)(1)-(3).

7:
Id.
 § 1.07(a)(46) (Vernon Supp. 2004-05); 
Fancher v. State,
 659 S.W.2d 836, 837 (Tex. Crim. App. 1983).

8:
Fancher,
 659 S.W.2d at 838; 
Brown v. State,
 605 S.W.2d 572, 575 (Tex. Crim. App. 1980).

9:
See Fancher,
 659 S.W.2d at 838; 
Brown,
 605 S.W.2d at 575.

10:
See
 
Tex. Penal Code Ann.
 § 1.07(a)(46).

11:
We are unpersuaded by the State’s argument that M.V.’s “uncontrolled defecation” is evidence of a serious bodily injury.  In addition to Dr. Holt’s testimony that M.V. had not suffered any long-term adverse effects as a result of his constipation, West testified that M.V.’s difficulty controlling his bowels was triggered by anxiety, not a physical injury. 

12:
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).

13:
Id.
 at 731-32.

14:
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
see also Abdnor
, 871 S.W.2d at 731-32; 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).

15:
See Kitchens v. State
, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (“It is appropriate where the alternate theories of committing the same offense are submitted to the jury in the disjunctive for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted.”), 
cert. denied
, 504 U.S. 958 (1992)
; 
accord Bagheri v. State,
 
119 S.W.3d 755, 761 n.5 (Tex. Crim. App. 2003)
.

16:
See Kutzner v. State,
 75 S.W.3d 427, 433 (Tex. Crim. App. 2002)
 (holding that we construe a statute according to its plain textual meaning without resort to extratextual sources unless language is ambiguous or plain meaning leads to absurd result).

17:
Tex. Penal Code Ann.
 § 22.04 (a)(1).  Appellant does not challenge the jury’s finding that she acted intentionally and knowingly.  Instead, she contends, “The victim’s potty problems 
after being locked . . . by [appellant]
 were classic manifestations of MENTAL PROBLEMS per the mental expert witness . . . .”   [Emphasis supplied.] 

18:
See id. 
§ 22.04(a)(2).

19:
See id. 
§ 22.04(e), (f).

20:
Id.
 (emphasis supplied).

21:
Francis v. State,
 36 S.W.3d 121, 125 (Tex. Crim. App. 2000); 
see also Ngo v. State
, No. PD-0504-04, 2005 WL 600353, at *5 & n.33 (Tex. Crim. App. Mar. 16, 2005)
 (holding that, when the State puts on evidence of repetition of the same criminal act but with different results, the jury must reach a unanimous verdict on which single, specific criminal act the defendant committed).

22:
See
 
Ngo
, 2005 WL 600353, at *
6, 8.

23:
See
 
Abdnor
, 871 S.W.2d at 731-32; 
Almanza
, 686 S.W.2d at 171.

24:
See
 
Tex. R. App. P.
 43.2(c); 
Moff v. State,
 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).

25:
See
 
Tex. R. App. P.
 43.2(d).