COURT
OF APPEALS

                  SECOND
DISTRICT OF TEXAS

                           FORT
WORTH

 

                                        NO.
2-04-208-CR

 

MARTINA STUHLER                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Martina Stuhler appeals her conviction
for injury to a child.  In a single
point, appellant contends that the trial court erred in refusing to grant a
directed verdict on the issue of serious bodily injury.  We reverse and render in part and remand in
part.








Three-year-old M.V. lived with his father and
appellant, his step-mother, from December 2002 to April 2003.  In April 2003, M.V. left appellant=s care
and went to live temporarily with Valerie Davis, a Asafe
house@ parent
who had cared for him previously.  Davis
took M.V. to the hospital because he was having difficulty urinating and
defecating, his stomach was distended and hard, he had a red mark on his hand
and a rash on his buttocks, and he walked with a limp and vomited after
eating.   At the hospital, X-rays
revealed increased stool throughout M.V.=s
colon.  M.V. was diagnosed with moderate
to severe constipation and treated with an enema. 

The State charged appellant with injury to a
child.  The indictment alleged that
appellant Aintentionally or knowingly
cause[d M.V.] serious bodily injury or serious mental deficiency, impairment or
injury . . . by confining or restraining [M.V.] in a bathroom or bedroom[.]@[2]  At trial, the State presented evidence of
appellant=s abusive acts that caused M.V.=s
resulting injuries.








At the close of the State=s
case-in-chief, appellant=s attorney moved for a directed
verdict on the serious bodily injury offense. 
The trial court denied the motion and, after the defense rested,
submitted the case to the jury.  Over
appellant=s objection, the jury charge
instructed the jury to find appellant guilty of injury to a child if the jury
found that appellant intentionally or knowingly caused M.V. serious bodily
injury or serious mental deficiency, impairment, or injury.[3]
 The jury found appellant guilty and
assessed punishment at sixty-five years=
confinement and a $10,000 fine.

In her point on appeal, appellant complains that
the trial court erred by denying her motion for directed verdict because there
is no evidence that M.V. suffered a serious bodily injury as a result of being
confined or restrained in the bathroom. 
Appellant further complains that the trial court=s
submission of the offenses to the jury in the disjunctive was harmful error
because A[t]here
is no way to tell if the jury convicted on mental injury alone.@  We address these complaints in turn.








A challenge to the denial of a motion for
instructed verdict is a challenge to the legal sufficiency of the evidence.[4]  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.[5]

A person commits the offense of injury to a child
if she

intentionally, knowingly,
recklessly, or with criminal negligence, by act or intentionally, knowingly, or
recklessly by omission, causes to a child . . . :

 

(1) serious bodily injury;

(2) serious mental deficiency, impairment, or
injury;  or

(3) bodily injury.[6]








The penal code defines Aserious
bodily injury@ as Abodily
injury that creates a substantial risk of death or that causes death, serious
permanent disfigurement, or protracted loss or impairment of the function of
any bodily member or organ.@[7]  In determining whether a serious bodily
injury has occurred, the relevant inquiry is the disfiguring or impairing
quality of the bodily injury as it was inflicted, not after the effects have
been ameliorated by medical treatment.[8]

After carefully reviewing the record in this
case, we hold that there is no evidence that appellant=s
conduct of confining or restraining M.V. in the bathroom caused M.V. serious
bodily injury.  The evidence is as follows.

 M.S.,
appellant=s ten-year-old son, testified
that appellant would lock M.V. in the bathroom in the morning and leave him
there until the afternoon so that she could sleep.  M.S. also testified that appellant disliked
M.V. and was upset that he had come to live with them. 

Dr. Cindy Holt, the doctor who treated M.V. when
he was admitted to the hospital, testified that M.V. had Amoderate
to severe@ constipation and a rash.  Although she testified that she found
bruising and trauma to the liver from some kind of blow, old fractures, and
evidence of burns, she did not testify that she found any other injury that
could be attributed to confining or restraining the child in a bathroom. 

Further, although Dr. Holt opined that M.V. had
suffered serious bodily injury, she immediately backtracked, stating,








When I saw [M.V.] he was not at risk of death.  The injuries that he happened to sustain were
not an immediate risk of death.  However,
that probably was luck of the draw.  When
you sustain a large trauma to the abdomen, you risk not only injuring the
liver, you risk injuring a much more fragile organ called the spleen, and that=s located on the other
side of the abdomen from the liver.  If
you injure the cells of the spleen, you can bleed to death very quickly.  And he didn=t sustain an injury to
his spleen that we could detect. 
However, again, he was lucky. 
That much abdominal trauma carries a substantial risk of serious injury
to that organ and if that organ had have been injured, he could have died. 

 

Dr. Holt also testified that, if the constipation
had been left untreated and had progressed, it could have become a serious
bodily injury.  But she acknowledged that
there was no evidence of serious permanent disfigurement to M.V. as a result of
his constipation and that there were Ano
serious long-term ramifications@ to his
stomach and intestines.  She said that
M.V. began to stool spontaneously after being given an enema.

Although this evidence shows that M.V.=s
constipation could have become a serious bodily injury absent medical
intervention, it does not show that the injury, Aas it
was inflicted,@[9]
constituted a serious bodily injury as that term is statutorily defined.[10]








The other evidence concerning M.V.=s
injuries as a result of his confinement in the bathroom pertains to his mental
injury.

Dr. Michelle Young, M.V.=s
therapist, testified that she diagnosed M.V. with long-term post-traumatic
stress disorder.  She said that M.V. told
her that appellant would tape him to the toilet seat.  She explained how appellant=s taping
M.V. to the toilet seat and locking him in the bathroom affected him.  For example, she stated that M.V. has
demonstrated a fear of bathrooms and has had problems with potty training,
nightmares, and stuttering.  Because of
these symptoms, Dr. Young opined that M.V. has a serious mental injury,
deficiency, or impairment. 








In addition to expert testimony about M.V.=s
condition, the State also presented lay testimony about how M.V.=s stay
with appellant affected him.  Charlyn
Bartlett, a foster parent, and Davis, the Asafe
house@ parent,
both described M.V.=s condition before he went to
live with appellant.  Davis testified that
M.V. was a potty-trained, Ahappy,
rambunctious three-year-old@ with an
outstanding vocabulary when he stayed with her in June 2002, and Bartlett
testified that M.V. was Atons of fun@ when he
spent two weeks in her care in December 2003. 
Bartlett also testified that M.V. had no visible injuries and, with
respect to M.V.=s potty training, stated that he
was a Atypical
three-and-a-half-year-old in the middle of potty training, so sometimes he
would go on the potty and other times he went in his pull-ups.@ 

Davis and Brenda West, M.V.=s foster
parent at the time of trial, described M.V.=s
condition after he lived with appellant. 
Davis testified that M.V. wore diapers, hoarded food, and was afraid to
take a bath when he returned to her care in April 2003.  West testified that M.V. initially feared the
bathroom and continues to have difficulty controlling his bowels during times
of stress.

While this evidence is, as appellant readily
admits, evidence that M.V. was Agreatly
mentally afflicted@ by appellant=s
conduct, it is not evidence of a serious bodily injury.[11]  Accordingly, because there is no evidence
that M.V. suffered a serious bodily injury as a result of appellant=s
conduct in confining or restraining M.V. in the bathroom, we hold that the
trial court erred by denying appellant=s motion
for a directed verdict on the serious bodily injury offense.

We now turn to appellant=s
complaint regarding the jury charge.








Appellate review of jury charge error involves a
two-step process.[12]  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.[13]  Error in the charge, if timely objected to in
the trial court, requires reversal if the error was Acalculated
to injure [the] rights of the defendant,@ which
means no more than that there must be some harm to the accused from the
error.[14]

Appellant complains that the trial court=s
submission of both offenses to the jury in the disjunctive was harmful error
because there is no way to tell whether the jury convicted her based solely on
M.V.=s mental
injury.  Relying on Kitchens v. State,
the State contends that, even if there is no evidence of serious bodily injury,
trial court=s charge is proper because Aserious
bodily injury@ and Aserious
mental deficiency, impairment, or injury@ are
simply two methods of committing a single offense and the evidence is
sufficient to sustain a conviction under at least one of these theories.[15]  We disagree.













The plain meaning of the statutory structure and
language indicates that these are separate offenses.[16]  For example, the offense of injury to a child
by intentionally or knowingly causing serious bodily injury is a section
22.04(a)(1) offense.[17]  The offense of injury to a child by
intentionally or knowingly causing serious mental deficiency, impairment, or
injury is a section 22.04(a)(2) offense.[18]  Further, subsections (e) and (f) of the
statute contemplate that the results described in subsections (a)(1), (2), and
(3) are separate offenses.[19]  Subsection (e) provides that Aan offense
under subsection (a)(1) or (2) is a felony of the first degree@ if
intentional or knowing, and subsection (f) provides that A[a]n offense
under subsection (a)(3) is a felony of the third degree when . . . committed
intentionally or knowingly.@[20]

A criminal defendant is entitled to a unanimous
jury verdict.[21]  When a jury is charged on multiple offenses,
the trial court must instruct the jury that it must be unanimous in deciding
which offense it found that the defendant committed, and the record must show
that the verdict was unanimous.[22]   The court=s charge
in this case harmed appellant by permitting a nonunanimous verdict in which
some jurors could have voted to convict her of causing serious bodily injury to
a child and some could have convicted her of causing serious mental injury to a
child.  This harm is exacerbated by the
fact that there is no evidence to support one of these offenses.  Accordingly, we hold that the trial court=s charge
constitutes reversible error.[23]








Because the trial court erred by not granting
appellant=s motion for directed verdict on
the serious bodily injury offense and because the trial court  committed reversible error in its charge to
the jury, we sustain appellant=s point
on appeal.  We reverse the trial court=s
judgment, render a judgment of acquittal on the serious bodily injury offense,[24]
and remand the cause to the trial court for a new trial on the serious mental
injury offense.[25]

 

JOHN
CAYCE

CHIEF
JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: September 29,
2005











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 22.04(a)(1)-(2) (Vernon 2003).  M.V.=s other injuries alleged in the indictment,
including bruises and two bone fractures, are not pertinent to this appeal
because the State elected to seek conviction for the injuries caused by
appellant=s locking M.V. in the
bathroom.





[3]Specifically, the
application paragraph of the charge instructed the jury:

 

Now if you find from the evidence beyond a
reasonable doubt that on or about the 31st day of March, 2003, in Denton
County, Texas the defendant, MARTINA STUHLER, did then and there intentionally
or knowingly cause serious bodily injury or serious mental deficiency,
impairment, or injury to [M.V.], a child 14 years of age or younger, by
act, to‑wit: by confining or restraining [M.V.] in a bathroom you will
find the defendant guilty of Injury to a Child, as charged in the
indictment.  [Emphasis supplied.]  





[4]McDuff v. State, 939 S.W.2d 607, 613
(Tex. Crim. App.), cert. denied, 522 U.S. 844 (1997); Franks v. State,
90 S.W.3d 771, 789 (Tex. App.CFort Worth 2002, no pet.).





[5]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim.
App. 2004).





[6]Tex.
Penal Code Ann.
' 22.04(a)(1)-(3).





[7]Id. ' 1.07(a)(46) (Vernon
Supp. 2004-05); Fancher v. State, 659 S.W.2d 836, 837 (Tex. Crim. App.
1983).





[8]Fancher, 659 S.W.2d at 838; Brown
v. State, 605 S.W.2d 572, 575 (Tex. Crim. App. 1980).





[9]See Fancher, 659 S.W.2d at 838; Brown,
605 S.W.2d at 575.





[10]See Tex. Penal Code Ann. ' 1.07(a)(46).





[11]We are unpersuaded by the
State=s argument that M.V.=s Auncontrolled defecation@ is evidence of a serious
bodily injury.  In addition to Dr. Holt=s testimony that M.V. had
not suffered any long-term adverse effects as a result of his constipation,
West testified that M.V.=s difficulty controlling
his bowels was triggered by anxiety, not a physical injury. 





[12]Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994).





[13]Id. at 731-32.





[14]Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); see also Abdnor, 871 S.W.2d at
731-32; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh=g).





[15]See Kitchens v. State, 823 S.W.2d 256, 258
(Tex. Crim. App. 1991) (AIt is appropriate where
the alternate theories of committing the same offense are submitted to the jury
in the disjunctive for the jury to return a general verdict if the evidence is
sufficient to support a finding under any of the theories submitted.@), cert. denied,
504 U.S. 958 (1992); accord Bagheri v. State, 119 S.W.3d 755, 761 n.5
(Tex. Crim. App. 2003).





[16]See Kutzner v. State, 75 S.W.3d 427, 433 (Tex.
Crim. App. 2002) (holding that we construe a statute according to its plain
textual meaning without resort to extratextual sources unless language is
ambiguous or plain meaning leads to absurd result).





[17]Tex.
Penal Code Ann.
' 22.04 (a)(1).  Appellant does not challenge the jury=s finding that she acted
intentionally and knowingly.  Instead,
she contends, AThe victim=s potty problems after
being locked . . . by [appellant] were classic manifestations of MENTAL
PROBLEMS per the mental expert witness . . . .@   [Emphasis supplied.] 





[18]See id. ' 22.04(a)(2).





[19]See id. ' 22.04(e), (f).





[20]Id. (emphasis supplied).





[21]Francis v. State, 36 S.W.3d 121, 125 (Tex.
Crim. App. 2000); see also Ngo v. State, No. PD-0504-04, 2005 WL 600353,
at *5 & n.33 (Tex. Crim. App. Mar. 16, 2005) (holding that, when the State
puts on evidence of repetition of the same criminal act but with different
results, the jury must reach a unanimous verdict on which single, specific
criminal act the defendant committed).





[22]See Ngo, 2005 WL
600353, at *6, 8.





[23]See Abdnor, 871
S.W.2d at 731-32; Almanza, 686 S.W.2d at 171.





[24]See Tex. R. App. P. 43.2(c); Moff v. State, 131 S.W.3d
485, 489 (Tex. Crim. App. 2004).





[25]See Tex. R. App. P. 43.2(d).