NO.
12-07-00004-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JENNIFER ANN NIXON,   §                      APPEAL FROM THE 392ND

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      HENDERSON
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Jennifer Ann
Nixon appeals her conviction for recklessly causing serious bodily injury to a
child, for which she was sentenced to imprisonment for seven years.  Appellant further appeals her convictions for
two counts of recklessly or with criminal negligence causing injury to a child
and one count of recklessly causing injury to a child for which she was
sentenced to imprisonment for two years for each conviction.  In two issues, Appellant argues that (1) the
evidence was factually insufficient to support the element of serious bodily
injury and (2) the trial court improperly refused to admit certain evidence
during the guilt-innocence phase of trial. 
We affirm.

 

Background

            Appellant
and Jimmy Nixon were married in 2002. 
A.H., Nixon’s son from a previous marriage, came to live with Nixon and
Appellant when A.H. was approximately eighteen months old.  After living with Nixon’s family for several
months, Appellant, Nixon, and A.H. moved to a house in Tool, Texas.








            On
July 26, 2004, Appellant and A.H. awakened early to drive Nixon to his new
job.  Afterwards, Appellant and A.H.
arrived back at their home sometime after 6:00 a.m.  Appellant instructed A.H. to use the toilet
before returning to bed.  A.H. complied
and remained in the bathroom for approximately ten minutes.  Appellant stated that during that time, she
saw A.H. stumble forward, but could not tell whether he hit his head.  

            Appellant
took A.H. from the bathroom and began to take him to his bedroom.  As the two made their way to the bedroom,
A.H. was initially walking slowly, but eventually came to a halt and abruptly
sat on the floor.  Appellant carried A.H.
toward his bed and began to remove his shirt. 
At this time, Appellant noticed that A.H. had a glazed look on his face
and was clenching his teeth.  After a
failed attempt to get A.H. to react,  and
after attempting in vain to pull A.H.’s clenched teeth apart, Appellant called
9-1-1.

            Medical
personnel arrived at approximately 7:05 a.m. 
Emergency Medical Technician Rick Williams noted that A.H. was taking
between six and eight breaths per minute, had a heart rate of between sixty-two
and sixty-eight beats per minute, and was “cyanotic”[1] and blue around
the lips and eyes.  A.H. was taken by
ambulance to East Texas Medical Center (“ETMC”) in Athens, Texas where he was
examined, intubated, and placed on an IV. 
Furthermore, a CT scan was performed on A.H.’s brain.  At ETMC, Appellant, Nixon, and Nixon’s mother
briefly visited with A.H. where he was alert and able to communicate with them.

            A.H.
was transported by helicopter to Children’s Medical Center in Dallas, Texas for
further evaluation and treatment.[2] 
It was ultimately determined that A.H. had multiple injuries to his body
including a subdural hematoma located on the back of his head in the parietal
region of the brain.  A.H. was released
from the hospital within five days of his arrival.

            Appellant
was charged by indictment with one count of 
intentionally and knowingly causing serious bodily injury to a child,
four counts of intentionally and knowingly causing bodily injury to a child,
and one count of recklessly causing bodily injury to a child and using or
exhibiting a deadly weapon during her commission of the offense.  Appellant pleaded “not guilty” and the matter
proceeded to jury trial.  Ultimately, the
jury found Appellant guilty of recklessly causing serious bodily injury to a
child, two counts of recklessly or with criminal negligence causing injury to a
child, and one count of recklessly causing injury to a child.  Following a trial on punishment, the jury
assessed Appellant’s punishment at imprisonment for seven years and a $1,000
fine for recklessly causing serious bodily injury to a child and imprisonment
for two years and a $500 fine as to each of the three remaining counts.  This appeal followed.

 

Factual
Sufficiency

            In
her first issue, Appellant argues that the evidence is factually insufficient
to support that  she caused serious
bodily injury to A.H.  When an appellant
raises a contention that the evidence is not factually sufficient to support
the jury’s verdict, we must first assume that the evidence is legally
sufficient under the Jackson[3] standard.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it to the evidence that
tends to disprove that fact.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict,  see Clewis, 922
S.W.2d at 133, our evaluation should not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  Where there is conflicting
evidence, the jury’s verdict on such matters is generally regarded as
conclusive.  See Van Zandt v. State,
932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).  Ultimately, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App.
2006) (evidence is factually insufficient only when reviewing court objectively
concludes that the great weight and preponderance of the evidence contradicts
the jury’s verdict).

            Serious
bodily injury is bodily injury that creates a substantial risk of death or that
causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ. 
See Tex. Penal Code Ann. §
1.07(a)(46) (Vernon Supp. 2007).  When
considering whether there exists serious bodily injury, the relevant inquiry is
the extent of the bodily injury as inflicted, not after the effects have been
ameliorated or exacerbated by medical treatment.  See Brown v. State, 605 S.W.2d
572, 575 (Tex. Crim. App. [Panel Op.] 1980), overruled on other grounds, Hedicke
v. State, 779 S.W.2d 837 (Tex. Crim. App. 1989).

            In
the instant case, in addition to our presumption that the evidence is legally
sufficient, we also note the testimony of board certified pediatrician Matthew
Cox.  Cox testified, in pertinent
part,  as follows:

 

Q.            What
was the most – the injury of most concern for you on [A.H.]?

                

A.            The
most critical injury was the fact that he had intracranial hemorrhage.  He had a head injury that brought him into
medical care.

 

Q.            Describe
to the jury what records you reviewed to support that and what you saw on the
child’s head to support that.

 

A.            So he
had a CAT scan that was done as part of his evaluation.  A CT scan of his head.  The CT scan of his head showed that he had
areas of bleeding around the surface of his brain.  They specifically note he had what we call
interhemispheric blood.

 

Interhemispheric –
our brain has two halves much like a walnut. 
And that area between the two areas of the brain, between the
hemispheres are interhemispheric.  And
they noted there was blood in the middle and in the posterior aspect
there.  So in the middle of the brain and
the back of the brain ... between the two halves of the brain there was blood.

 

....

 

Q.            Tell
the jury what you mean ....  Is it normal
to have blood in these areas?

 

A.            So
this is hemorrhage.  This is areas of
abnormal bleeding.  The blood should be
within the blood vessels.  And in [A.H.]’s
case, the blood was outside the blood vessels and layering on top of the
surface of the brain, and the blood should not be there.  So that was an abnormal finding.  The blood is what we call subdural hematoma.  That’s blood within a certain space that
surrounds the brain tissue, and blood should not be there.  So that was an abnormal finding of having
bleeding or hemorrhage around the surface of the brain. 

 

                                ....

 

Q.            Doctor,
is it your understanding that the legal term “serious bodily injury” means
bodily injury that creates a substantial risk of death or that causes death,
serious permanent disfigurement or protracted loss or impairment of a function
of any bodily member or organ?

 

                                ....

 

A.            Yes.

                

Q.            Based
upon your review of [A.H.], the review of his reports[,] and your training and
experience, do you have an opinion as to whether or not [A.H.] had suffered
serious bodily injury when you met him?

                                

A.            He did
suffer serious bodily injury, yes.

 

Q.            And
can you explain to the jury what that serious bodily injury was?

                                

A.            The
head injury is the main serious bodily injury. 
Because of the head injury, he required excessive medical care.  He required ventilatory support.  They had to put him on a breathing tube and a
breathing machine for a while because he wasn’t breathing normally.  So without medical intervention, there was a
chance he would have died as a result of the injury.  

                

So that’s why I
believe it meets that definition is because the head injury caused him to
breathe abnormally which is a sign and symptom of a head injury.  And that breathing abnormality potentially
could have caused him to have more significant effects, including death.  

 

....

 

Q.            Does
that in any way – the fact that once he got oxygen he started acting better,
does that in any way lessen the severity of the injuries he had?

 

A.            I don’t
believe so because he still required intubation.  They still when he got to the hospital they
put a breathing tube in him.  He still
had signs of a significant head injury. 
So it didn’t lessen the injury.

 

 

            Appellant
argues that the subdural hematoma Cox described was not one that rose to the
level  of creating a substantial risk of
death, but rather merely amounted to there being an area of the brain where an
amount of blood accumulated due to a blow to the head.  Appellant notes that Cox testified with
regard to a more severe head injury associated with subdural hematomas where
there is associated swelling of the brain caused by edema, which was not
present here.  However, Cox’s testimony
that injury to brain tissue could be made worse by such swelling does not serve
to lessen the severity of A.H.’s serious bodily injury.  As Cox stated,  the subdural hematoma suffered by A.H.
resulted in a breathing abnormality that could have caused A.H. to die had
there been no medical intervention.

            Appellant
further notes that (1) A.H.’s mother testified that in the two and a half years
since the event, A.H. had suffered no long term effects from the head injury,
(2) A.H. was consciously communicating with his grandmother prior to being
transported to Children’s Medical Center in Dallas, (3) there were no recorded
incidents during his treatment in Dallas indicating that he was in danger of
expiring, and (4) he was discharged from Children’s Medical Center in only five
days.  However, we iterate that  when considering whether there exists a
serious bodily injury, the relevant inquiry is the extent of the bodily injury
as inflicted, not after the effects have been ameliorated or exacerbated by
medical treatment.  See Brown,
605 S.W.2d at 575.

            Finally,
Appellant discusses evidence that A.H.’s breathing was limited to eight breaths
per minute.  Appellant notes that the
record indicates that when medical personnel assessed A.H.’s breathing, his
teeth were clenched, indicating, according to Appellant, that he was possibly
seizing and taking breaths only when necessary. 
Appellant further notes that A.H.’s respiration rate had increased
dramatically by the time he arrived  at
ETMC. 

            We
have reviewed the record in its entirety. 
We iterate that our evaluation should not substantially intrude upon the
jury’s role as the sole judge of the weight and credibility of witness
testimony, see Santellan, 939 S.W.2d at 164, and where
there is conflicting evidence, the jury’s verdict on such matters is generally
regarded as conclusive.  See Van
Zandt, 932 S.W.2d at 96.  Our
review of the record as a whole, with consideration given to all of the
evidence, both for and against the jury’s finding, has not revealed to us any
evidence that causes us to conclude that the proof of guilt is so obviously
weak or is otherwise so greatly outweighed by contrary proof as to render
Appellant’s conviction clearly wrong or manifestly unjust.  Therefore, we hold that the evidence is
factually sufficient to support the jury’s verdict.  Appellant’s first issue is overruled.

 

Admissibility
of Evidence








            In
her second issue, Appellant argues that the trial court erred in denying during
the guilt-innocence phase of trial the admission into evidence of a journal
Appellant kept concerning the events of A.H.’s life with Appellant and
Nixon.  The State objected to the journal’s
admission arguing that it was not relevant and contained hearsay.  Appellant argued that the journal was being
offered for the purpose of showing Appellant’s mental state, to show her
feelings for and relationship to A.H., and to rebut any attempt by the State to
show that she was the “evil stepmother,” who was uncaring toward her
stepchild.  Appellant further argued that
the journal fell under the recorded recollection exception to the hearsay rule.[4]  The court sustained the State’s objection and
refused to allow admission of the journal or further testimony pertaining
thereto.[5]  Appellant made no offer of proof regarding
the journal.

            The
State first argues that Appellant waived the issue by her failure to make an
offer of proof.  We agree.  Before an appellate court may consider a
complaint concerning the exclusion of evidence, the proponent must have
perfected an offer of proof or a bill of exceptions.  See Tex.
R. Evid. 103(b); Guidry v. State, 9 S.W.3d 133, 153 (Tex.
Crim. App. 1999).  Absent a showing of
what such evidence would have been or shown, nothing is preserved for
review.  Guidry, 9 S.W.3d
at 153.  The record must be developed before
the charge on guilt is read to the jury. 
See Tex. R. Evid.
103(b);  Warner v. State,
969 S.W.2d 1, 2 (Tex. Crim. App. 1998). 
Moreover, allowing evidence adduced in the punishment phase to suffice
as an offer of proof regarding evidence excluded during the guilt-innocence
stage precludes the trial court from reconsidering the guilt-innocence stage
ruling in light of the actual evidence and, therefore, defeats an important
purpose of the offer of proof.  See Baumgarton
v. State, No.14-99-01188-CR, 2001 WL 1218532, at *2 n.4 (Tex. App.–Houston
[14th Dist.] Oct. 11, 2001, pet. ref’d) (not designated for publication); see
also Ludlow v. DeBerry, 959 S.W.2d 265, 270 (Tex. App.–Houston [14th
Dist.] 1997, no pet.).  Therefore, since
Appellant failed to make an offer of proof, she has not preserved the error, if
any, of which she now complains. 
Appellant’s second issue is overruled.

 

Disposition

            Having
overruled Appellant’s first and second issues, we affirm the
trial court’s judgment.

                                                                                                   JAMES T. WORTHEN   

                                                                                                               Chief Justice

Opinion
delivered March 31, 2008.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)











[1] Cyanosis is “a bluish discoloration of the
skin, resulting from inadequate oxygenation of the blood.”  See The
American Heritage Dictionary 359 (2nd College Ed. 1982).





[2] ETMC personnel contacted Child Protective
Services to report the case as one of potential child abuse.  CPS Officer Jim Dietsch arrived at ETMC and
detained Appellant and Nixon to obtain information regarding A.H.’s
injury.  When Appellant and Nixon arrived
in Dallas, they were prohibited from seeing A.H. 





[3] See Jackson v. Virginia, 443
U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).





[4] See Tex.
R. Evid. 803(5).





[5]
The journal was later admitted during Appellant’s trial on punishment.